# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1028
_____

United States of America

*Plaintiff - Appellant*

v.

John B. Stacks

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 15, 2015
Filed: May 9, 2016

_____

Before MURPHY, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

After John B. Stacks was convicted of wire fraud, making a false and fraudulent claim, and making false statements, the district court[1] granted a judgment of acquittal on two counts of making false statements, and a new trial on the remaining counts.

_____

[1]The Honorable J. Leon Holmes, United States District Judge for the District of Arkansas.

*United States v. Stacks*, No. 4:13-347, slip op. (E.D. Ark. Dec. 2, 2014) (ECF No. 102). The government appeals. Having jurisdiction under 18 U.S.C. § 3731, this court affirms.

I.

On June 7, 2008, after a tornado struck his property near Damascus, Arkansas, Stacks applied for a disaster loan from the Small Business Administration (SBA). Stacks is the owner of Mountain Pure, LLC (Mountain Pure), which bottles water for sale. He owns two other water-bottling facilities: Mountain Pure MS in Mississippi, and Mountain Pure TX in Texas.

In his disaster-loan application, Stacks certified that "all information in and submitted with this application is true and correct to the best of my knowledge. All financial statements submitted with this application fully and accurately present the financial position of the business." In an SBA form "Schedule of Liabilities," Stacks listed six loans, with a total balance of $24,050,000. In the Schedule's "Current or Delinquent?" column, Stacks wrote that each was "current."

Two weeks after Stacks submitted the application, an SBA field inspector met Stacks at the Damascus property. Stacks told him that the property was not a manufacturing site but rather a storage and repair site for the machines, equipment and tools from all three manufacturing sites. Stacks did not have an itemized list of losses from the tornado. Days later, the SBA withdrew Stacks's application from consideration due to insufficient information.

Months later, Stacks resubmitted the disaster-loan application with a list of damaged equipment totaling $459,880. The SBA notified Stacks it had reactivated his application. Tony Bauer, an SBA loan officer, told Stacks that Mountain Pure's cash flow would not support additional debt. Stacks said that the Mountain Pure TX

facility would soon begin operations. Bauer asked Stacks whether Mountain Pure TX had any contracts with stores, and whether Stacks had revenue projections for Mountain Pure TX. Stacks replied that Mountain Pure TX had contracts with Dean Foods and Walmart, and provided revenue projections prepared by a consulting firm. These projections showed $2.5 million in projected sales for 2008, and $25 million in projected sales for 2009. Bauer reversed course and recommended that the SBA loan Stacks $703,300.

The loan was memorialized in a Loan Authorization and Agreement. Stacks and Mountain Pure were the borrowers; Mountain Pure MS and Mountain Pure TX were guarantors. In the Agreement, Stacks certified that "all representations in the borrower's loan application (including all supplementary submissions) are true, correct and complete."

After the SBA disbursed $526,100 of the loan, it requested additional documentation that Stacks owned the equipment on the itemized list and that it was at the Damascus facility when the tornado struck. Stacks replied with additional information. The SBA found it inadequate, and reduced the loan to the $526,100 already disbursed. The SBA continued to request documentation from Stacks, and 21 months later, declared the loan in default for failure to provide documentation, and demanded the entire balance due immediately.

In a second superseding indictment, the government charged Stacks with defrauding the SBA by misrepresenting that certain equipment was at the Damascus site during the tornado, failing to disclose material information about his financial condition, misrepresenting that his liabilities were current, failing to disclose all outstanding loans on the Schedule of Liabilities, misrepresenting the status of Mountain Pure TX's contract with Walmart, and providing inaccurate revenue projections for the Mountain Pure TX plant.

A jury convicted Stacks of three counts of wire fraud, one count of submitting a false or fraudulent claim, and three counts of making a false statement to a government agency. Stacks moved for acquittal on all counts, and alternatively for a new trial. The district court granted acquittal on two counts of making false statements (with a conditional new trial if the acquittals were reversed), and granted a new trial for the remaining counts. The government appeals.

II.

This court reviews a district court's grant of a judgment of acquittal de novo, applying the same standards as the district court. *United States v. White*, 794 F.3d 913, 918 (8th Cir. 2015). Under Rule 29, the district court, on the defendant's motion, "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." **Fed. R. Crim. P. 29(a)**. "A district court must consider a motion for judgment of acquittal with very limited latitude and must neither assess the witnesses' credibility nor weigh the evidence." *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007). A guilty verdict is overturned only if, viewing the evidence most favorably to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Sanchez*, 789 F.3d 827, 834 (8th Cir. 2015). This court views "the evidence in the light most favorable to the guilty verdict, and grant[s] all reasonable inferences that are supported by that evidence." *United States v. Dean*, 810 F.3d 521, 527 (8th Cir. 2015).

In counts 7 and 8, Stacks was charged with making two false statements under 18 U.S.C. § 1001(a)(2), which prohibits an individual from "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation" to a federal agency. To establish a violation of 18 U.S.C. § 1001, the government must prove that "(1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the defendant made the statement

knowingly and willfully; (4) the statement was within the jurisdiction of a federal agency; and (5) the statement was material." *United States v. Rice*, 449 F.3d 887, 892 (8th Cir. 2006).

## A.

Count 7 charges that Stacks falsely represented to the SBA that there had been no substantial adverse change in his financial condition between June 7, 2008, the date of his original loan application, and February 11, 2009, the date he signed the Loan Authorization and Agreement. The government argues that a reasonable jury could have found that Stacks failed to disclose three adverse changes in his financial condition: (1) additional loans since his initial application, (2) a $900,000 balance owed to suppliers, who were threatening to stop shipment, and (3) Metropolitan Bank's suggestion that Stacks move his loan to another lender.

As the district court correctly held, Stacks's statement of no substantial adverse changes in his financial condition was not false. A statement is "false" if it contains "factual misrepresentations." *United States v. Blankenship*, 382 F.3d 1110, 1132 (11th Cir. 2004). The Agreement documents do not define "substantial adverse change," but say, "Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc." No reasonable juror could find that the adverse changes the government alleges in Stacks's financial condition—additional loans, debts owed to suppliers, and the suggestion to change lenders—are comparable to liens, bankruptcies, or convictions. Moreover, the government did not introduce evidence of the amount Stacks owed suppliers at the time of the original application, so evidence of the amount he owed to suppliers when signing the Agreement in 2009 does not demonstrate a *change* in financial condition. No reasonable jury could find that Stacks made a false statement by affirming no substantial adverse change in his financial condition. The district court did not err in granting a judgment of acquittal on count 7.

B.

Count 8 charges that Stacks made a false statement by certifying in the Loan Authorization and Agreement that his original application was true, correct, and complete. The district court held that the government had not identified a statement in the Agreement that was purportedly false, incorrect, or incomplete.

On appeal, the government argues that the district court erred by failing to consider that the Agreement incorporates Stacks's statement from the Schedule of Liabilities that his loans were "current," not "delinquent." The Agreement required Stacks to certify, "All representations in the Borrower's loan application (including all supplementary submissions) are true, correct and complete." As part of his application, Stacks included the Schedule of Liabilities.

Even if Count 8 encompasses the "current" statement on the Schedule of Liabilities, judgment of acquittal was warranted. As the district court noted, the Schedule of Liabilities does not define "current" or "delinquent." Moreover, the loan officers—both private and SBA—testified that there is no consistent definition in the banking industry as to what makes a loan current or delinquent. SBA witnesses testified that a loan is delinquent if payment is even a day late, but acknowledged a grace period where (1) no late fees accrued, (2) the loan was not internally reported as delinquent and (3) the alleged delinquency was not reported to credit agencies. A private loan officer testified that SBA loans are not considered delinquent until ninety days past due.

At trial, Stacks proved that he consistently made payments shortly after the due date, and that the bank never reported the loans as delinquent to any credit agencies. Without a definition of "current" or "delinquent", no reasonable jury could find beyond a reasonable doubt that Stacks willfully and knowingly made a false statement. The district court did not err in granting acquittal on Count 8.

III.

The government argues that the district court abused its discretion in granting a new trial on the remaining counts.

Under Rule 33, the district court "may vacate any judgment and grant a new trial if the interest of justice so requires." **Fed. R. Crim. P. 33(a)**. This court reviews "for abuse of discretion a district court's decision to grant or deny a new trial on the ground that the verdict is contrary to the weight of the evidence." *United States v. Collier*, 527 F.3d 695, 701 (8th Cir. 2008). "While the district court's discretion is quite broad—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict . . . , there are limits to it." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). "An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing the factors commits a clear error of judgment." *United States v. Butler*, 296 F.3d 721, 723 (8th Cir. 2002).

Motions for new trials based on the weight of the evidence are generally disfavored. *Campos*, 306 F.3d at 579. "That being said, the district court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and with caution." *Id.* "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.* The remedy "is reserved for exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015).

A.

The district court granted a new trial on Stacks's convictions in Counts 1, 2 and 3 for wire fraud under 18 U.S.C. § 1343. To prove wire fraud, the government must prove (1) intent to defraud, (2) participation in a scheme to defraud, and (3) the use of a wire in furtherance of the fraudulent scheme. *United States v. Rice*, 699 F.3d 1043, 1047 (8th Cir. 2012). "If the defendant is charged with multiple counts, the government must prove each element with respect to each count." *Id.*

Counts 1, 2 and 3 allege that Stacks engaged in a scheme to defraud the SBA by (1) misrepresenting that certain equipment was on the Damascus property during the tornado, (2) failing to disclose material information about his financial condition, (3) misrepresenting that his loans were current, (4) failing to disclose loans not listed on the Schedule of Liabilities, (5) misrepresenting that Mountain Pure TX had a contract with Walmart to sell water, and (6) providing inaccurate revenue projections for the Mountain Pure TX plant.

Granting a new trial, the district court issued a thorough, well-reasoned opinion. The court credited the evidence favoring the guilty verdicts, citing evidence from which a reasonable jury could convict Stacks. The court ruled that, despite the evidence of guilt, the verdicts were contrary to the weight of the evidence and that the extraordinary remedy of a new trial was warranted for several reasons. First, the court noted that Stacks's forthrightness about his finances—disclosing more than $24 million in loans, authorizing the SBA to pull his credit reports, and producing additional financial statements outlining the entire debt structure of the Mountain Pure entities—negated any inference of intent to defraud the SBA by omitting the additional loans from the Schedule of Liabilities. Additionally, the court outlined the weaknesses of the government's evidence about whether the equipment was at Damascus during the tornado. The court concluded that the government failed to prove that Stacks misrepresented having Mountain Pure equipment on the property.

The district court considered the most damning evidence of Stacks's guilt—SBA officer Bauer's testimony that Stacks explicitly told him that the Schedule of Liabilities identified the entire debt structure of *all three* Mountain Pure entities. The district court found Bauer's statement not credible for two reasons. First, Stacks testified about the same conversation, with a better recall of it, as evidenced by Bauer's mistaken recollection of Stacks's name and the name of Mountain Pure's customer. Further, the other evidence at trial corroborated Stacks's account of the conversation. Stacks testified that during the conversation, he told Bauer that he would provide additional information about the debt structure of all three Mountain Pure entities. Shortly after the conversation, the SBA received additional financial information from Stacks, corroborating his account of the conversation. The district court did not abuse its discretion in failing to credit Bauer's testimony about Stacks's representations of the debt. *See **United States v. Aguilera***, 625 F.3d 482, 487 (8th Cir. 2010) ("The district court was in a better position to evaluate credibility, and we decline to second-guess the district court's assessment.").

As for the revenue projections for the Mountain Pure TX plant, the district court noted that the projections were prepared long before Stacks's application to the SBA, distancing them from any scheme to defraud the government. Moreover, at the time of the loan application, Mountain Pure TX was not a borrower or guarantor of the loan. As the district court emphasized, it was Bauer—not Stacks—who initiated the conversation about the revenue projections, undermining the inference that Stacks was intentionally scheming to defraud the SBA.

On appeal, the government argues that the district court improperly discredited Bauer's testimony and may only do so if it is physically impossible. The government cites *United States v. McAtee*, 481 F.3d 1099, 1105 (8th Cir. 2007), where this court, reviewing both a judgment of acquittal and a grant of new trial, said "The test for rejecting evidence as incredible is extraordinarily stringent and is often said to bar reliance only on testimony asserting facts that are physically impossible." ***Id.***, *citing*

*United States v. Crenshaw*, 359 F.3d 977, 988 (8th Cir. 2004). Those words, however, were in the context of considering *both* motions simultaneously, while *Crenshaw* pertained only to a Rule 29 motion for judgment of acquittal. *Crenshaw*, 359 F.3d at 988. Despite that language in *McAtee*, district courts have long evaluated witness credibility when considering a motion for a new trial based on the weight of the evidence. *See, e.g.*, *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980) ("The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses."); *United States v. Clayton*, 787 F.3d 929, 935 (8th Cir. 2015) (affirming denial of motion for new trial because witnesses were credible and their testimony was corroborated by other evidence); *United States v. Tamariz-Cazeres*, 376 F. App'x 653, 656 (8th Cir. 2010) (same). Discrediting Bauer's testimony was not an abuse of discretion.

Despite the government's protests that the evidence was overwhelming, the district court acknowledged the evidence supporting the verdicts. The district court weighed it against the exculpatory evidence before concluding in a thorough, reasoned manner that a miscarriage of justice may occur if the verdicts were allowed to stand. It did not abuse its considerable discretion in doing so. *See United States v. Devries*, 630 F.3d 1130, 1132 (8th Cir. 2011) ("We give great deference to the district court when it grants a new trial motion on the ground that the verdict is against the weight of the evidence, and we reverse only upon a strong showing of abuse.").

B.

The district court granted a new trial on Stacks's conviction in Count 4 for making a false and fraudulent claim to the SBA under 18 U.S.C. § 287. To prove a false claim, the government must prove that (1) Stacks "made and presented" to the government a claim, (2) "the claim was false, fictitious or fraudulent," (3) Stacks knew the claim was false, fictitious or fraudulent, and (4) "the claim was material" to

the government.  ***United States v. Jirak***, 728 F.3d 806, 811 (8th Cir. 2013).  The government alleges that, as detailed, the claim Stacks submitted to the SBA was a part of a scheme intended to defraud.  As explained, the district court did not abuse its discretion in granting a new trial on the fraud counts.  The derivative count of submitting a fraudulent claim to the SBA suffers from the same infirmities.  The district court did not abuse its discretion in granting a new trial on Count 4.

## C.

The district court granted a new trial on Stacks's conviction in Count 6 for making a false statement to an agency of the United States government under 18 U.S.C. § 1001(a)(2).  To prove a violation under § 1001(a)(2), the government must prove that (1) Stacks made a statement, (2) the statement was false, fictitious or fraudulent, as Stacks knew, (3) Stacks made the statement knowing and willfully, (4) the statement was within the jurisdiction of a federal agency, and (4) the statement was material. ***United States v. McKanry***, 628 F.3d 1010, 1018 (8th Cir. 2011). Count 6 charges that Stacks caused a document to be sent to the SBA that included false 2008 revenues and false 2009 revenue projections for the Mountain Pure TX plant.  As explained, the district court did not abuse its discretion in determining that the evidence of the timing and circumstances of the projections considerably undermined any intent to deceive the SBA.  The district court did not abuse its discretion in granting a new trial in Count 6, charging Stacks with identical conduct.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____