# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3971

_____

United States of America

*Plaintiff - Appellee*

v.

Bobby Joe Hampton

*Defendant - Appellant*

_____

No. 17-1607

_____

United States of America

*Plaintiff - Appellant*

v.

Bobby Joe Hampton

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: December 15, 2017
Filed: April 4, 2018

_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

In July 2015, a jury convicted Bobby Joe Hampton on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Hampton, an African-American man, appeals the district court's[1] partial denial of his challenge, under Batson v. Kentucky, 476 U.S. 79 (1986), to the government's use of peremptory strikes against two African-American potential jurors. The government cross-appeals Hampton's sentence, arguing that it should have been enhanced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). We affirm in both appeals.[2]

## I. Background

The morning of Hampton's trial, the district court clerk drew the names of 31 people to form a venire from which a twelve-member jury and one alternate juror would be selected. There were two African Americans in the venire, Juror 22 and Juror 45. After voir dire, the government tried to use two of its peremptory

_____

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

[2]Hampton also sought leave to file a pro se supplemental brief in this court, which the Clerk of Court granted "subject to whatever weight the court wishes to accord it." We decline to give any weight to the issues raised in Hampton's pro se brief, leaving his arguments to collateral proceedings. See United States v. Ramirez-Hernandez, 449 F.3d 824, 826–27 (8th Cir. 2006).

challenges to strike Juror 22 and Juror 45 from the venire. Hampton challenged the strikes under Batson.

In response to Hampton's challenge, the government explained why it wanted to strike the jurors: "[T]hey had negative body language, arms crossed some of the time. Just not very responsive to us." The government described Juror 45's body language as "worse" than Juror 22's because "45 didn't say anything." The government also pointed to the fact that Juror 22 had participated in a bench conference. The district court explained that, during the bench conference, Juror 22 had merely disclosed that she was the plaintiff in a pending civil lawsuit. The government then again argued that Juror 22 had her "arms crossed basically the entire time," and insisted that "body language speaks volumes." As to Juror 45, the government noted that she had not responded to questioning during voir dire, and claimed she had been unwilling to look at one of the government attorneys. In the government's view, Juror 45 was "clearly upset" when she was called to be on the venire, which showed she did not want to be on the jury. The government further explained that it would not have used a peremptory strike against a third African American who had appeared for jury duty that morning, but whose name was not drawn for the venire; and that it had used a peremptory challenge against another member of the venire who was not African-American but who was also non-responsive during voir dire. Finally, the government noted that a Hispanic man had been seated on the jury.

The district court sustained Hampton's challenge as to Juror 22, explaining that the government should have asked the court about the bench conference had it caused concern. The district court indicated that, during the conference, Juror 22 had not given the court the impression she was trying to avoid jury service or said anything that would preclude her from sitting on the jury. The district court overruled the Batson challenge as to Juror 45 based on the government's body-language argument.

Juror 22 was seated on the jury, and Juror 45 was excused. The jury thereafter convicted Hampton.

The PSR recommended that Hampton be sentenced under the ACCA based, in part, on a 2006 Arkansas burglary conviction under Ark. Code Ann. § 5-39-201(a). The district court determined that Hampton's burglary conviction did not qualify as a violent felony, declined to enhance his sentence under the ACCA, and sentenced him to 87 months and 23 days in prison.

## II. Hampton's Batson Challenge

The "Constitution forbids striking even a single prospective juror for a discriminatory purpose." Foster v. Chatman, 136 S. Ct. 1737, 1747 (2016) (quoting Snyder v. Louisiana, 552 U.S. 472, 478 (2008)). The Supreme Court has provided a three-step process for determining whether a strike is discriminatory:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Id. (quoting Snyder, 552 U.S. at 476–77). "We review Batson rulings for clear error, according great deference to the district court's findings, and 'keeping in mind that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from the party opposing the strike.'" United States v. House, 825 F.3d 381, 385 (8th Cir. 2016) (quoting United States v. Maxwell, 473 F.3d 868, 871 (8th Cir. 2007)).

The district court did not clearly err by overruling, in part, Hampton's <u>Batson</u> challenge. "[D]emeanor and body language may serve as legitimate, race-neutral reasons to strike a potential juror." <u>Maxwell</u>, 473 F.3d at 872; <u>see also</u> <u>United States v. Davidson</u>, 449 F.3d 849, 852–53 (8th Cir. 2006) ("Body language and demeanor can be appropriate reasons to strike jurors."). This court has affirmed a denial of a <u>Batson</u> challenge as not clearly erroneous where the stricken juror "had refused to make eye contact with the attorneys or the judge, had slouched in his chair and appeared disinterested in the trial, and had been the only prospective juror not to list an occupation or work history on the juror information sheet." <u>House</u>, 825 F.3d at 386. And we have held that it was not clearly erroneous to overrule a <u>Batson</u> challenge where the government claimed a juror had been inattentive, rolled her eyes, and sighed during voir dire. <u>United States v. Ellison</u>, 616 F.3d 829, 832 (8th Cir. 2010). Here, the government gave legitimate, race-neutral justifications for striking Juror 45, *i.e.*, her non-responsiveness to questioning during voir dire, body language, and unwillingness to make eye contact. <u>See</u> <u>House</u>, 825 F.3d at 386; <u>Maxwell</u>, 473 F.3d at 872.

For the first time on appeal, Hampton notes that only 3 of the final 12 jurors answered any questions during voir dire, and that only 14 of the 31 members of the venire responded. In Hampton's view, these numbers undermine the government's assertion that it attempted to strike both Juror 22 and Juror 45 based on their non-responsiveness. To the extent Hampton has not waived this argument by not raising it in the district court, these numbers are nevertheless inadequate to support an inference of racial animus in the government's decision to strike Juror 45. Specifically, Hampton has not shown that the other non-responsive jurors were similarly-situated to Juror 45, *i.e.*, that they exhibited similar body language and disinterest in serving on the jury during voir dire. <u>See</u> <u>Davidson</u>, 449 F.3d at 852.

Our adherence to this court's established rule that body language can be a legitimate race-neutral reason for striking potential jurors should not be construed as

an endorsement of such a practice in all circumstances. That a potential juror happened to cross her arms, hesitated to make eye contact with a federal prosecutor, or was not eager to disclose personal information in a crowded courtroom during voir dire should rarely be the sole defense to a <u>Batson</u> challenge. "*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." <u>Morgan v. Illinois</u>, 504 U.S. 719, 729–30 (1992) (alteration in original) (quoting <u>Rosales-Lopez v. United States</u>, 451 U.S. 182, 188 (1981) (plurality opinion)). Active engagement with potential jurors—by district courts, the government, and defense counsel—better informs the use of peremptory challenges by all parties.

## III. The Government's Cross-Appeal

In its cross-appeal, the government argues that Hampton should have been sentenced under the ACCA based, in part, on his 2006 burglary conviction under Ark. Code Ann. § 5-39-201(a). During the pendency of this appeal, another panel of this court held that convictions under Ark. Code Ann. § 5-39-201(a) do not qualify as violent felonies under the ACCA. <u>United States v. Sims</u>, 854 F.3d 1037, 1039–40 (8th Cir. 2017). "It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." <u>Mader v. United States</u>, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (quoting <u>Owsely v. Luebbers</u>, 281 F.3d 687, 690 (8th Cir. 2002)).

## IV. Conclusion

Accordingly, we affirm.

_____