# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2304
_____

United States of America

*Plaintiff - Appellee*

v.

Marlon Iron Crow

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: June 19, 2020
Filed: August 14, 2020

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A jury convicted Marlon Iron Crow of second-degree murder in violation of 18 U.S.C. §§ 1111(a) and 1153. Iron Crow appeals, asserting the district court[1] committed reversible error in four particulars: (1) by denying his Batson v. Kentucky,

_____

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

476 U.S. 79 (1986), challenge; (2) by failing to dismiss the indictment or grant him a new trial because of alleged government misconduct; (3) by not entering a judgment of acquittal or granting him a new trial because of an alleged dearth of evidence against him; and (4) by denying his request for a downward variance. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Background

A federal grand jury returned an indictment charging Iron Crow with second-degree murder for his involvement in the November 11, 2015, death of Craig Charging Crow. Iron Crow moved to dismiss the indictment, alleging the government had intimidated a witness during its investigation. The district court denied the motion and the case proceeded to trial. During voir dire the prosecution struck one of two Native Americans on the venire, and Iron Crow raised a <u>Batson</u> challenge. The district court considered and denied Iron Crow's <u>Batson</u> challenge.

Among the witnesses at trial was Nicole Morsette, Iron Crow's half-sister. She described a marathon of heavy drinking at her Porcupine, South Dakota, home involving Iron Crow, her boyfriend, and herself. During the morning of November 10, 2015, Iron Crow arrived at Morsette's house to repair a floor. Somehow the group got diverted and started drinking around 9:00 in the morning, and continued on through most of the day. The next morning Charging Crow and another guest arrived at breakfast time. The drinking resumed and continued throughout the day. At some point in the late afternoon or early evening Charging Crow joked that he could "knock out" Iron Crow. Iron Crow then challenged Charging Crow to "try it." Iron Crow initiated a fistfight with Charging Crow that resulted in Charging Crow falling to the ground. Morsette testified that once Charging Crow was on the ground Iron Crow continued to punch him and ultimately resorted to kicking and stomping him.

During cross-examination Morsette admitted to making inconsistent statements during an earlier interview with investigators, telling them that it was actually Charging Crow who initiated the fight. She explained on redirect examination that she had been drinking the day of that interview, and that she had felt threatened by the government's investigation as well as pressure from her family to lie to investigators. A sober observer, Morsette's twelve-year-old son, L.T., largely corroborated Morsette's trial testimony, testifying that he saw Charging Crow back away from Iron Crow during the fight. He also added detail to Morsette's version of events by relating that he saw Iron Crow put on his boots and adjust Charging Crow's body before stomping Charging Crow's chin. After the stomping Morsette directed Iron Crow to leave her home, which he did.

When efforts to revive Charging Crow proved futile, Morsette's boyfriend dialed 911 and officers and an ambulance were dispatched to the scene. Charging Crow was transported to the hospital where he was declared dead on arrival. Brian Levenson, the nurse who treated Charging Crow, testified that Charging Crow died either from a subarachnoid hemorrhage that began when his head hit the floor or from asphyxiation on his own vomit. Levenson also testified that he observed minor injuries around Charging Crow's lip and chin, which could have been caused by the intubation while en route to the hospital. Dr. Donald Habbe, a forensic pathologist, performed an autopsy on Charging Crow. He testified the cause of death was a subarachnoid hemorrhage, which he suspected had occurred because of a lacerated basilar artery near the base of Charging Crow's brain. He informed the jury that this was a rare injury, but one that can occur when an intoxicated individual sustains a blow to the head. Dr. Habbe also testified that bleeding he discovered just under Charging Crow's scalp was caused by the application of blunt force, possibly with a fist or a boot.

Iron Crow contended that he acted in self-defense. The jury found the government had proven the absence of self-defense beyond a reasonable doubt and

returned a guilty verdict. After the district court denied Iron Crow's post-trial motions for acquittal and for a new trial, it sentenced Iron Crow to a within-Guidelines sentence of 240 months' imprisonment. This appeal followed.

## II. Discussion

### A. *Batson*

We review the denial of a <u>Batson</u> challenge for clear error. <u>United States v. Hampton</u>, 887 F.3d 339, 342 (8th Cir. 2018). "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." <u>Batson v. Kentucky</u>, 476 U.S. 79, 98 n.21 (1986). Deference is particularly appropriate when the trial judge finds that an attorney credibly relied on a juror's demeanor when exercising the strike. <u>Snyder v. Louisiana</u>, 552 U.S. 472, 479 (2008).

When a <u>Batson</u> challenge is raised, it is the duty of the trial judge to decide whether the reasons offered by the prosecutor are the real reasons or whether they are mere pretext for a strike made on the basis of race. <u>Flowers v. Mississippi</u>, 139 S. Ct. 2228, 2244 (2019). "The ultimate inquiry," the Supreme Court recently reiterated, "is whether the State was motivated in substantial part by discriminatory intent." <u>Id.</u> (quotation marks omitted); <u>see also</u> <u>Hernandez v. New York</u>, 500 U.S. 352, 365 (1991) ("In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.").

The reason proffered here for the challenged strike was that the juror appeared "disinterested" and was "very hard to engage." Because these reasons relate to the juror's demeanor, they fall within the <u>Snyder</u> admonition that particular deference should be given to the trial judge's ability to determine whether the demeanor could

-4-

"credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." Snyder, 552 U.S. at 477. While Iron Crow claims that other members of the venire failed to answer questions posed by the lawyers, our precedent requires more than this. In United States v. Hampton, our court held under analogous circumstances that there was no clear error in denying the defendant's Batson challenge when the defendant had failed to demonstrate "other non-responsive jurors were similarly-situated to [the struck juror], *i.e.*, that they exhibited similar body language and disinterest in serving on the jury during voir dire." 887 F.3d at 343. So too with Iron Crow. The district court did not commit clear error in denying the Batson challenge.

## *B. Government Misconduct*

Iron Crow appeals two decisions involving claims of government misconduct: (1) the district court's denial of his motion to dismiss the indictment for alleged witness intimidation, and (2) its denial of Iron Crow's motion for a new trial based on prosecutorial misconduct during the trial. We review a denial of a motion to dismiss an indictment by reviewing the district court's factual findings for clear error and its legal conclusions *de novo*. United States v. Louper-Morris, 672 F.3d 539, 559 (8th Cir. 2012). For government conduct to warrant dismissal of an indictment it must "shock the conscience of the court." United States v. Horton, 756 F.3d 569, 576 (8th Cir. 2014) (quotation marks omitted). A district court's denial of a motion for a new trial is reviewed for abuse of discretion. United States v. Sigillito, 759 F.3d 913, 932 (8th Cir. 2014). To warrant a new trial, the alleged misconduct must have been so prejudicial as to have deprived the defendant of a fair trial. United States v. Barrera, 628 F.3d 1004, 1007 (8th Cir. 2011).

Iron Crow points to the following alleged government conduct as improper: (1) intimidation of Morsette during a pre-trial interview; (2) elicitation of false testimony; (3) misstatements of law during voir dire; and (4) improper vouching and attempts to lead Morsette at trial.

Iron Crow's witness intimidation claim is based on Morsette's testimony that she felt threatened during the government's investigation. Morsette noted that she did not "go through this kind of stuff every day of my life" and that she was frightened when the prosecutor told her that she would "hate to see [her] go away." However, Morsette also testified she "felt relieved" when she visited with the prosecutor. Given Morsette's equivocal testimony on this issue, the district court did not err by denying the motion to dismiss the indictment and allowing each side an opportunity to explore the circumstances of the pre-trial investigation. This solution appropriately allowed the jury to weigh whether Morsette's testimony had been influenced by any unease she felt during the investigation.

To obtain relief based on a claim that the government elicited false testimony Iron Crow must show: (1) the prosecution used perjured testimony; (2) it knew or should have known the testimony was perjured; and (3) there was a reasonable likelihood that the perjured testimony could have affected the verdict. United States v. West, 612 F.3d 993, 996 (8th Cir. 2010). Iron Crow submitted a post-trial affidavit from his daughter in which she asserted that she heard L.T. say he lied on the stand when he stated that Morsette and her boyfriend "helped" Charging Crow. Iron Crow's daughter also claims she heard Morsette admit to lying on the stand "about being drunk." While we are not entirely certain which testimony Iron Crow purports these statements proved false, solving this mystery is unnecessary because Iron Crow has not produced any evidence that the government knew or should have known of the use of perjured testimony. Nor has he demonstrated that the testimony could have affected the verdict. The district court did not err when it denied Iron Crow's claim based on the elicitation of false testimony.

Iron Crow's other claims of government misconduct present closer questions. A careful review of the transcript reveals that the prosecutor made inappropriate comments about *mens rea* during voir dire which invaded the province of the court to instruct the jury. The prosecutor also used inappropriate leading questions at various points and attempted to testify through and vouch for Morsette. To its credit,

the district court often checked the prosecutor's penchant to bend the rules by sustaining defense counsel's objections and giving the jury rather forceful curative instructions. It is ultimately because of the district court's attention to and correction of these matters that we conclude that even if the prosecutor acted improperly at trial, we cannot find that these actions—considered separately or together—prejudiced Iron Crow to such an extent as to render his trial fundamentally unfair. See United States v. Swift, 623 F.3d 618, 623 (8th Cir. 2010) (holding that "even if the [prosecutor's] comments were improper, [defendant] was not deprived of a fair trial" on account of the district court's curative instruction).

## C. Evidence Sufficiency

We review *de novo* the denial of Iron Crow's motion for judgment of acquittal, viewing the trial evidence in the light most favorable to the verdict, and affirming if any rational jury could have found Iron Crow guilty beyond a reasonable doubt. United States v. Vega, 676 F.3d 708, 721 (8th Cir. 2012). To convict Iron Crow of second-degree murder, the jury had to find he (1) is a Native American who (2) unlawfully killed Charging Crow, (3) with malice aforethought, (4) in Indian country. See United States v. Cottier, 908 F.3d 1141, 1146 (8th Cir. 2018).

The evidence, when taken in the light most favorable to the verdict, was sufficient to convict Iron Crow: Morsette and L.T. each testified that Iron Crow started a fight with Charging Crow that led to Iron Crow punching and stomping Charging Crow while he was on the ground, and ended in Charging Crow's death. Crediting this testimony, a reasonable jury could find that Iron Crow acted with malice aforethought–that is, with reckless and wanton behavior that he was aware risked death or serious bodily harm. See Id.

Iron Crow makes much of Dr. Habbe's testimony that Charging Crow may have died immediately after his head hit the ground, before any stomping or kicking occurred. He draws from this testimony two arguments: (1) the post-fall kicking and

stomping is inappropriate evidence to consider when determining *mens rea* because Charging Crow might already have been dead, and (2) the second-degree murder charge must fail because without the kicking and stomping causing the death of Charging Crow, the facts would not sustain a conviction for second-degree murder. The first argument misapprehends *mens rea* evidence. Even if Charging Crow died prior to the last punch or kick, it was permissible for the jury to use these blows, even if postmortem, to reasonably infer that Iron Crow acted with malice aforethought. See Model Crim. Jury Instruction 6.18.1111A-1 (Judicial Comm. on Model Jury Instructions for the Eighth Circuit 2017) ("In determining whether [the victim] was unlawfully killed with malice aforethought, you should consider all the evidence concerning the facts and circumstances preceding, surrounding and following the killing which tend to shed light upon the question of intent."). Regardless of whether the acts in question occurred after the death of Charging Crow, they are still relevant as to Iron Crow's *mens rea* at the time the death-inducing acts took place.

With regard to Iron Crow's second argument, the jury was confronted with a question of fact as to the timing of Charging Crow's death. Both sides vigorously presented and argued to the jury their version of the facts. The evidence when viewed in a light most favorable to the verdict, that Charging Crow was alive when kicked and stomped, is sufficient to support the conviction. Because the other elements—that Iron Crow is a Native American and that the crime took place in Indian country—were also sufficiently established, the district court appropriately denied the motion for judgment of acquittal.

We review Iron Crow's appeal of the denial of his motion for a new trial for abuse of discretion. United States v. Stacks, 821 F.3d 1038, 1044 (8th Cir. 2016). The motion was based on the weight of the evidence and is therefore "generally disfavored." Id. Granting such motions "is reserved for exceptional cases in which the evidence preponderates heavily against the verdict." Id. at 1045 (quotation marks omitted). This is not such a case. It is true that Morsette changed her story a number of times before testifying at trial. While the evidence contained inconsistencies, they

were the kind of grist that juries regularly grind in finding the facts of a case, not the type that warrants a new trial. See United States v. Clayton, 787 F.3d 929, 935–36 (8th Cir. 2015) (upholding denial of motion for new trial where jury was justified in believing witnesses despite their prior inconsistent statements).

*D. Sentencing*

Iron Crow's final argument is that his sentence of 240 months' imprisonment was substantively unreasonable. We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. United States v. Robison, 759 F.3d 947, 950 (8th Cir. 2014).

Iron Crow's sentence was within his Guideline range of 235–293 months, and is therefore presumed reasonable. Id. Iron Crow contends the district court gave too little weight to the purported post-trial deterioration of his mental health, and to the fact that Iron Crow had only one prior criminal history point. Iron Crow's critiques of the district court's weighing of the various sentencing factors do not show his sentence was substantively unreasonable. See United States v. Hall, 825 F.3d 373, 375 (8th Cir. 2016) ("[T]he mere fact that the court could have weighed the sentencing factors differently does not amount to an abuse of discretion."). The district court acknowledged these mitigating circumstances at sentencing, but decided to give more weight to the severity of Iron Crow's conduct. See Robison, 759 F.3d at 951 (holding sentence was substantively reasonable where "[t]he district court . . . considered [defendant]'s arguments at sentencing and determined that they were outweighed by the gravity of [his] conduct"). There was no abuse of discretion.

## III. Conclusion

We affirm Iron Crow's conviction and sentence.
_____