# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-2777

_____

United States of America

*Plaintiff - Appellee*

v.

Austin James Mallory

*Defendant - Appellant*

_____

No. 22-2784

_____

United States of America

*Plaintiff - Appellee*

v.

Raekwon Malik Patton, also known as Kwon, also known as Nutt

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: October 19, 2023
Filed: June 12, 2024

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

STRAS, Circuit Judge.

A jury found Raekwon Patton and Austin Mallory guilty for their roles in a drive-by shooting. Although they challenge the evidence and the instructions the jury heard, we affirm.

I.

The shooting occurred after a chance encounter with a rival gang member outside a Des Moines shopping mall. Mallory had driven there in an SUV with a group that included Patton and other members of two local street gangs, the Heavy Hitters and OTB (short for Only the Brothers). In the parking lot, they spotted Raysean Nelson, whom they followed as he drove away. Mallory was still behind the wheel, with Patton in the back seat.

Eventually, Nelson pulled over and got out. There was an exchange of gunfire once Mallory's SUV passed Nelson's car, though it is unclear who shot first. At one point, Patton was hanging out the window firing back in Nelson's direction. Another passenger in the SUV, who may have been shooting as well, was shot in the head.

Patton and Mallory each faced charges of attempted murder in aid of racketeering, *see* 18 U.S.C. § 1959(a)(5), and discharging a firearm during a crime of violence, *see id.* § 924(c)(1)(A)(iii), the former as a principal and the latter as his accomplice. The jury found them both guilty, but not before the district court[1] overruled multiple objections.

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

## II.

We begin with Patton, who attacks the verdict from two angles. Missing, he argues, were at least two jury instructions and reasonable limits on the evidence that the government presented, much of which cast him in a poor light.

## A.

Particularly problematic from his perspective were the instructions on the attempted-murder-in-aid-of-racketeering charge. Although it is a federal crime, the "predicate offense[]" can come from state law. *United States v. Kehoe*, 310 F.3d 579, 588 (8th Cir. 2002) (explaining that state or federal law can be the source). When it does, state law defines its parameters, including potential defenses. *See id.*

One defense to an Iowa attempted-murder charge is justification. *See* Iowa Code § 707.11(1). Patton's position is that the other side's decision to shoot first justified his decision to return fire, yet the jury never received the justification instruction he requested. We review de novo whether it should have. *See United States v. Poe*, 442 F.3d 1101, 1103 (8th Cir. 2006) ("Whether there is sufficient evidence to support the submission of an instruction on an affirmative defense is a question of law . . . ."); *cf. State v. Shanahan*, 712 N.W.2d 121, 141 (Iowa 2006) (explaining that a justification instruction requires "substantial evidence").

Justification requires a bit more when the person claiming it was "engaged in illegal activity." Iowa Code § 704.1(3). Iowa allows most people facing injury or death to "stand [their] ground." *State v. Ellison*, 985 N.W.2d 473, 477–78 (Iowa 2023). But not Patton, who was "engaged in [the] illegal activity" of possessing a firearm as a felon, which created a duty to retreat before he could use force himself. *Id.* (citation omitted); *State v. Baltazar*, 935 N.W.2d 862, 871 (Iowa 2019) (holding that a defendant who illegally brought a gun to a confrontation had a "duty to retreat" before using it in self-defense).

-3-

There was no evidence that he tried. It is true that the shell casings and bullet fragments discovered near the intersection and the bullet holes throughout Mallory's SUV are consistent with someone else shooting before Patton did, meaning that he might have had a "reasonabl[e] belie[f] that [deadly] force [was] necessary." Iowa Code § 704.3. But Patton, Mallory, and the others had a golden opportunity to escape, given that Nelson's car was already stopped. Yet, by having guns at the ready and rolling down the windows as they approached Nelson's parked car, the only reasonable inference was that they planned to fire regardless of what anyone else did. *Cf.* Iowa Code § 704.6(3) ("The defense of justification is not available to . . . [o]ne who initially provokes the use of force against oneself by one's unlawful acts . . . ."). It was, in other words, a preplanned drive-by shooting, not an act of justified self-defense. *See State v. Cruse*, 228 N.W.2d 28, 30 (Iowa 1975) (explaining that self-defense requires "retreat[ing] as far as is reasonable and safe" (citation omitted)).

No one doubts that, once the shooting started, Patton and the others faced grave danger. Look no further than the fact that a bullet struck another backseat passenger in the head. But we do not know when it happened—toward the beginning, middle, or end of the shootout—and an "alternative course of action" may well have prevented it. *Baltazar*, 935 N.W.2d at 870. Unfortunately, Patton returned fire before anyone had a chance to try.

B.

Another problem, according to Patton, was that the instructions set the bar too low on the racketeering element. *See* 18 U.S.C. § 1959(a)(5). He requested an instruction requiring the jury to find that the attempted murder was "an integral aspect of membership" in the gang or that a "substantial purpose" of the crime was maintaining or increasing his position. The court stuck with a less rigid formulation, requiring only that it have as its "purpose . . . gain[ing] entrance to, . . . maintain[ing] or increas[ing] [his] position" in the organization. The question for us is whether it

-4-

abused its discretion in doing so. *See United States v. White Horse*, 35 F.4th 1119, 1121 (8th Cir. 2022).

The answer is no because the instruction "fairly and adequately" told the jury what it needed to know. *Id.* (citation omitted). It closely tracked the statutory language, which does not specify how substantial the purpose must be. *See* 18 U.S.C. § 1959(a) (prohibiting acts done "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity"); *see also United States v. Gill*, 513 F.3d 836, 852 (8th Cir. 2008) (recommending that "district courts should clearly list . . . [what] the particular offense requires by tracking the applicable statutory language"); *White Horse*, 35 F.4th at 1123 (explaining that jury instructions do not need to clarify every nuance with "technical[] perfect[ion]" (citation omitted)).

It also did not tempt the jury to focus just "on [Patton's] status as a gang member." *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008). In fact, the district court dispelled any possible confusion by giving specific examples of what would satisfy the legal standard: "committ[ing] the crime because [the defendant] knew it was expected of him by reason of his membership" or "thought it would enhance his position or prestige within the enterprise." These examples focused the jury's attention where it belonged, which was on Patton's motivation for attempting the murder. *See* 18 U.S.C. § 1959(a).

C.

The last part of Patton's appeal focuses on the evidence admitted over his objections. Our review is "for an abuse of discretion." *United States v. Caruso*, 63 F.4th 1197, 1202 (8th Cir. 2023).

Some of it was background information about gangs. A federal agent testified about how they form, act, and deal with one another. The point was to help the jury

understand upcoming testimony about the mindset and practices of OTB and other Des Moines gangs. *See* Fed. R. Evid. 702 (authorizing expert testimony); *United States v. Sparks*, 949 F.2d 1023, 1025–26 (8th Cir. 1991) (holding that it was not an abuse of discretion to let an expert testify "regarding the way gangs operate").

It is true, as Patton emphasizes, that there was some daylight between the "gangs" the agent had in mind and how "an enterprise engage[s] in racketeering activity" under federal law. *Compare, e.g.*, Iowa Code § 723A.1(2) (defining "[c]riminal street gang"), *with* 18 U.S.C. § 1959(a), (b). But the need for the jury to figure out the relationship between the two concepts was why the testimony was helpful. *See Sparks*, 949 F.2d at 1026. Together with the more specific evidence about OTB and what led to the shootout, it allowed the jury to evaluate whether the gang was an "enterprise" and the murder attempt aided in its racketeering activity. *See* Fed. R. Evid. 401 (defining "relevan[ce]").

The testimony also posed little risk of "unfair prejudice." Fed. R. Evid. 403. After all, the agent acknowledged up front that he did not know Patton (or have any other involvement with the case), so it is unlikely that the jury relied on what he said for anything more than general background information. *Cf. United States v. Overton*, 971 F.3d 756, 763 (8th Cir. 2020) (warning of the risks posed when an investigator provides "dual-role testimony" as both a lay witness and an expert).

As for more specific evidence about OTB from other witnesses, it was relevant to show that the gang was "engaged in racketeering activity" when the crime occurred. 18 U.S.C. § 1959(a). In addition to the gang's history and past activities, some witnesses discussed later crimes, including an attempt to retaliate for the earlier shooting. No one suggested that Patton, who was behind bars by then, had anything to do with them. *See* Fed. R. Evid. 403; *see also United States v. Johnson*, 535 F.3d 892, 897 (8th Cir. 2008) (emphasizing that we generally defer to the district court's Rule 403 balancing). But the evidence was valuable because it allowed the jury to

draw the reasonable inference that a functioning enterprise both before and after the crime would have also been one on the day it happened.  *See* Fed. R. Evid. 401.

## III.

Mallory also attacks the verdict from two angles.  The first strikes a familiar note by challenging two evidentiary decisions.  The second is about whether the government established that Mallory was a knowing accomplice.

## A.

We start where we left off, with the district court's evidentiary rulings. Mallory's counsel wanted to put another occupant of the SUV on the stand.  The hope was that he would admit he was the driver but switched seats with Mallory before the cops pulled them over.  *Cf. Rosemond v. United States*, 572 U.S. 65, 71 (2014) (explaining that accomplice liability requires "an affirmative act in furtherance of th[e] offense").  When he failed to show up at trial, the only alternative was to try to get the admission in through another OTB member, but the district court excluded it.

It was classic hearsay, an out-of-court statement offered for the truth of the matter asserted.  *See* Fed. R. Evid. 801(c).  The debate was over whether it fell into the exception for statements against penal interest, which are only admissible if they are trustworthy.  *See* Fed. R. Evid. 804(b)(3)(B) (requiring "corroborating circumstances that clearly indicate [the statement's] trustworthiness").  The district court concluded it was not, and we generally defer to its "determination of a declarant's credibility and motivation in making a statement."  *United States v. Chase*, 451 F.3d 474, 480 (8th Cir. 2006).

The relevant factors for determining whether a statement is trustworthy are the declarant's motive, character, and relationship with the witness; the timing of the

statement and what prompted it; and whether anyone else heard it. *See United States v. Halk*, 634 F.3d 482, 490 (8th Cir. 2011). Applying those factors here, the district court had reason to exclude it.

First, the declarant had a "clear motivation to lie." *United States v. Dunn*, 76 F.4th 1062, 1067 (8th Cir. 2023). The evidence established that engaging in violence was a way to gain standing in the gang, so he had an incentive to exaggerate his involvement.

Second, he had denied being the driver during a pretrial interview. He said then that he had not driven the SUV, switched seats with Mallory, or told someone he had. *See United States v. Ironi*, 525 F.3d 683, 687 (8th Cir. 2008) (concluding that a declarant's own contradictory statements "undermined" the trustworthiness of an alleged admission against interest).

Third, even the person who heard the statement questioned its veracity, given that it was "[n]ot clear at all" when the switch could have happened with the police chasing them. With little to no corroboration for the hearsay statement, the district court did not abuse its discretion by excluding it. *See id.*

B.

Nor did it have to admit evidence showing Mallory's involvement in a variety of non-gang activities, including ROTC, Boy Scouts, and swim team. He hoped that showing he had a "busy schedule" would allow the jury to see that he did not have time to participate in a gang or plan shootings.

The problem was that much of it was inadmissible character evidence. *See* Fed. R. Evid. 405(b) (prohibiting the admission of "specific instances of [a] person's conduct" unless "character or a character trait is an essential element of a charge, claim, or defense"). To the extent any was not, the risk of unfair prejudice

-8-

substantially outweighed any probative value it had. *See* Fed. R. Evid. 403. The district court's main concern was that the evidence would invite the jury to decide the case "on an improper . . . emotional [basis]." *United States v. Condon*, 720 F.3d 748, 755 (8th Cir. 2013) (citation omitted). Preventing it from doing so was not an abuse of discretion.

## C.

The evidence was also sufficient for the jury to conclude that Mallory was guilty as an accomplice. The government had to prove that he knew there was a gun in the car and one of his passengers would fire it at someone else. *See* 18 U.S.C. §§ 2(a), 924(c)(1)(A)(iii), 1959(a)(5); *see also Rosemond*, 572 U.S. at 77 (explaining that "active[] participat[ion] . . . with full knowledge of the circumstances constituting the charged offense" establishes the necessary intent). If a reasonable jury, "viewing [the] evidence in the light most favorable to the government" and drawing "all reasonable inferences" in its favor, could have found that he did, his attempted-murder and discharging-a-firearm convictions will stand. *United States v. Atkins*, 52 F.4th 745, 751–52 (8th Cir. 2022) (citation omitted) (applying de novo review).

Several facts established Mallory's knowledge. First, he admitted during a jailhouse interview that he knew someone in the SUV was about to fire once the back windows dropped. Another passenger confirmed Mallory's interpretation: when "the windows went down," it meant someone "was going to shoot somebody." According to him, they came down before the SUV "got on the block," meaning that the jury could have inferred that Mallory still had time to hit the brakes, turn the vehicle around, or otherwise withdraw his assistance. *See Rosemond*, 572 U.S. at 78 (clarifying that an accomplice's "knowledge of a firearm must be advance knowledge").

The windows were not the only tipoff. Mallory's social-media feed featured posts from Patton and other OTB members discussing how they carried guns and shot at rivals. With that background, he would have known that a drive-by shooting was a distinct possibility after a passenger who "was into it" with Nelson and "didn't like" him said to follow his car.[2] *See United States v. Daniel*, 887 F.3d 350, 357 (8th Cir. 2018) (holding there was sufficient evidence that a defendant knew an accomplice would use a gun and emphasizing that "the jury can 'draw inferences . . . based on all the facts and circumstances of a crime's commission'" (emphasis omitted) (quoting *Rosemond*, 572 U.S. at 78 n.9)). Or at least the jury could have reasonably concluded so.

IV.

We accordingly affirm the judgments of the district court.

_____

___

[2]Although Mallory also suggests that the verdict was against the weight of the evidence, it appears he is just repackaging his argument that the government's evidence of knowledge fell short, not suggesting that his "preponderate[d] heavily against" it. *United States v. Stacks*, 821 F.3d 1038, 1044–45 (8th Cir. 2016) (citation omitted) (explaining that granting a new trial based on the weight of the evidence is "generally disfavored," "reserved for exceptional cases," and committed to the district court's "quite broad" discretion (citations omitted)). Regardless, this is not one of those "exceptional cases" deserving of a new trial. *Id.*