# United States Court of Appeals
### For the Eighth Circuit
_____

No. 23-1830
_____

United States of America

*Plaintiff - Appellee*

v.

Descart Austin Begay, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: April 10, 2024
Filed: September 10, 2024
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

A jury found Descart Begay, Jr., guilty of both sexual abuse and aggravated sexual abuse. *See* 18 U.S.C. §§ 2241(a)(1), 2242(1). Although he challenges the evidence the jury heard and the sentence he received, we affirm.

# I.

S.S. had not heard from Begay, a former coworker, in over a decade. Yet one day she received a Facebook message trying to strike up a conversation. The discussion quickly fizzled out, so it was a surprise when he showed up later that afternoon at her home on the Red Lake reservation in northern Minnesota. The two chatted for a while before heading inside, where they began looking at her artwork. The subject of painting with an airbrush came up, so he went home to grab one.

When he returned, the situation took a turn for the worse. With S.S.'s son playing video games in the living room, Begay began rubbing her arm in the hallway. She said no, but he would not stop. He said that he had "wanted this since [he] was 21 years old," shoved her into the bedroom, and raped her.

At some point, her son called out. It distracted Begay long enough for S.S. to scramble out to the living room, where she managed to grab her son and get to the front door. But as she tried to leave, Begay caught up with her and slammed it shut. Although S.S. cried out and pleaded with him to stop, he began sexually assaulting her again.

This time, S.S. managed to break free completely and drive away with her son. When she arrived at her mother's house, she spent a few minutes outside sobbing near her father's grave. Once she mustered the courage to go inside, she revealed to her mother why she was so upset: Begay had raped her.

While driving back home several hours later, she spotted Begay, who began following her on his bicycle. Shortly after she arrived home, he began pounding on the front door. In response, she locked herself in a room, called her estranged husband to tell him that Begay had raped her, and contacted the police.

When officers arrived, they saw Begay "duck and dive" in an attempt to hide. Then he tried to leave on his bicycle, but he did not get far before they arrested him.

Following a five-day trial, a jury found him guilty of two counts each of sexual abuse, *see* 18 U.S.C. §§ 2242(1), 1151, 1153(a), and aggravated sexual abuse, *see id.* §§ 2241(a)(1), 1151, 1153(a). The district court[1] sentenced him to 200 months in prison.

## II.

Begay first challenges what happened at trial. He argues that the jury heard too much from the government and too little from him. We review evidentiary rulings "for an abuse of discretion, keeping in mind that we will reverse only if an error affected the defendant's substantial rights or had more than a slight influence on the verdict." *United States v. Streb*, 36 F.4th 782, 788 (8th Cir. 2022) (citations omitted).

## A.

During redirect examination, S.S. testified that she told others that Begay had raped her. The general rule is that a witness's prior consistent statements are inadmissible hearsay when "offered for the truth of the matter asserted." *United States v. Mallory*, 104 F.4th 15, 20 (8th Cir. 2024); *see* Fed. R. Evid. 801(c).

In two situations, however, they are "not hearsay." Fed. R. Evid. 801(d)(1)(B). One is when "rebut[ting] an express or implied charge that the declarant recently fabricated [her testimony] or acted from a recent improper influence or motive in so testifying." *Id.* (B)(i). And the other is when "rehabilitat[ing] the declarant's credibility as a witness when attacked on another ground." *Id.* (B)(ii).

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

S.S.'s testimony fits into both categories. At trial, she withstood multiple attacks on her credibility. One recurrent theme was that she had a motive to lie because she feared that her estranged husband would become violently angry if he found out that she had consensual sex with another man. During cross-examination, Begay's counsel tried to convince the jury that she made up the story about the rape to avoid angering him. This is an example of a category-one situation: a "charge" that a witness fabricated a story based on a motive to lie. *See* Fed. R. Evid. 801(d)(1)(B)(i); *see also Tome v. United States*, 513 U.S. 150, 158 (1995) (discussing this type of situation).

The other line of attack was that the jury could not trust S.S.'s recollection because she had a faulty memory, both from past drug use and her mental-health struggles. Cross-examination uncovered several details she could not remember. Some were from after the assault, like when she put on her socks and the identity of the officer who helped her. Others were about what happened during the rape, like whether Begay choked her. These raised a category-two situation: credibility "attack[s] on another ground." Fed. R. Evid. 801(d)(1)(B)(ii).

The prosecutor highlighted her prior consistent statements in response to both types of impeachment. *See* Fed. R. Evid. 801(d)(1)(B). S.S. testified on redirect that she told multiple people—her mother, her estranged husband, and the officers who interviewed her—about the rape. In response to additional questioning, she also agreed that she told an FBI agent and the examining nurse about it. And then she summed up by saying that she had "repeatedly told law enforcement that Mr. Begay [had] raped [her]."

Begay's position is that these statements were hearsay because they all came after her motive to lie arose. That is, if she was worried about angering her estranged husband, then she had a motive to lie right from the start. For support, he relies on *Tome v. United States*, 513 U.S 158 (1995).

In *Tome*, the Supreme Court considered whether "rebut[ting] an express or implied charge . . . of recent fabrication" or acting from a recent "improper influence or motive" is available only when the prior consistent statement *precedes* "the alleged influence, or motive to fabricate." *Id.* at 157–58. The answer was yes: only pre-motive prior consistent statements qualified. *Id.* at 160. On its own, *Tome* suggests that the jury should not have heard *any* of S.S.'s prior consistent statements because her alleged motive to lie already existed at the time she made them. *See United States v. Bercier*, 506 F.3d 625, 629 (8th Cir. 2007) (holding that prior consistent statements were inadmissible under *Tome* when the "defense at trial was that [the victim] fabricated her story of non-consensual sexual assault immediately after leaving his bedroom").

*Tome*, however, is not the end of the story. A 2014 amendment to the Federal Rules of Evidence added the second category of admissible prior consistent statements. *See* Fed. R. Evid. 801(d)(1)(B)(ii). It applies any time a credibility attack involves "another ground," something other than an allegedly fabricated statement arising out of a motive to lie or improper influence. For its part, *Tome* interpreted an earlier version of the rule that included only the first category. *See United States v. Burch*, 809 F.3d 1041, 1046 (8th Cir. 2016) (recognizing that *Tome* still applies to that subparagraph). The question presented here is whether the *Tome* pre-motive-statement requirement applies to the second category too.

A step back into the common law of hearsay, the body of law that the Supreme Court relied on in *Tome*, provides the answer. Courts have long recognized that an out-of-court statement used to rehabilitate a witness is not hearsay. *See United States v. Simonelli*, 237 F.3d 19, 27 (1st Cir. 2001); *United States v. Rubin*, 609 F.2d 51, 70 (2d Cir. 1979) (Friendly, J., concurring). It shows that a witness is reliable, not that the statement is true. *See* 2 Robert P. Mosteller et al., *McCormick on Evidence* § 251, at 225 (8th ed. 2020) (noting that "consistent statements are often admitted to explain what would otherwise appear to be an inconsistency in the witness's testimony and to rebut a charge of faulty memory").

This case is a good example: the prosecution offered S.S.'s prior consistent statements to prove that she did not change her story. *See* 5 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 801.22[1][a] (2d ed. 2009) (explaining that prior consistent statements "tend[] to show that the witness is telling the truth at trial, since the trial testimony matches what the witness said earlier"). If the reason for admission, on the other hand, was to show that Begay had raped her, then it would be classic hearsay, offered for the "truth of the matter asserted." *See* Fed. R. Evid. 801(c)(2). Under the common law, the former would be admissible, and the latter would not be. *See id.* advisory committee's notes to original rule ("Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive but not as substantive evidence."); *United States v. Kenyon*, 397 F.3d 1071, 1081 (8th Cir. 2005) (explaining that prior consistent statements could be submitted to the jury when "offered only for purposes of rehabilitation" and not "for the truth of the matter[] asserted").

The 2014 amendment changed the landscape by getting rid of this common-law distinction. *See generally* Fed. R. Evid. 801 advisory committee's notes to 2014 amendment. A rehabilitative use now provides a gateway to across-the-board admissibility, both as a response to a general credibility attack and as substantive evidence of guilt. *See id.* ("[P]rior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well."); *McCormick on Evidence*, *supra*, § 251, at 225 (8th ed. 2020) (observing that "if a statement is admitted to rehabilitate a witness's credibility . . . the statement is admissible, not only to affect credibility, but also for its truth and is considered not hearsay"). The rationale for the change is that the prior consistent statement necessarily must match what the witness has already said in court. *See* Fed. R. Evid. 801 advisory committee's notes to proposed rules para. (d)(1) ("If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem."); *see also Weinstein's Federal Evidence*, *supra*, § 801.22[1][a] (2d ed. 2009). In other words, the testifying witness is basically adopting the earlier prior consistent statements, so it would be confusing for the jury to try to differentiate between the hearsay and non-hearsay uses of them. *See* Fed. R. Evid. 801 advisory

committee's notes to 2014 amendment (explaining that when "[t]he prior statement is consistent with the testimony given on the stand, and . . . the opposite party wishes to open the door for its admission in evidence, no sound reason is apparent why it should not be received generally"). Once again using this case as an example, S.S. testified at trial that Begay raped her, so she has, in a sense, adopted her earlier statements saying the same thing.

Now back to *Tome*. The rationale for a pre-motive-statement limitation in category-one cases is that a prior consistent statement only becomes "a square rebuttal of the charge that the testimony was contrived as a consequence of that motive" if the witness had been saying the same thing all along, even before the motive to lie arose. *Tome*, 513 U.S. at 158. The rehabilitative force disappears, on the other hand, if the prior consistent statement came later. *Cf. id.* If time 1 is when the motive to lie arose, then we would expect statements made at time 2 and time 3 to be consistent. After all, the same motive to lie existed at those points. A consistent statement at time 0, in contrast, squarely rebuts the motive-to-lie charge.

There is no similar rationale for importing a pre-motive-statement requirement into the second category. The main reason is the nature of the attack. First, if the charge is a lack of credibility based on a faulty memory or any "[]other ground," then a prior consistent statement made at *any* point—time 0, 1, 2, or 3— will "rehabilitate" the witness. Second, it is almost impossible to pinpoint a specific point in time when a faulty memory arises, unlike a motive to lie or other improper influence, so it would not "make[] . . . sense" to import a timing requirement. *Id.* And finally, timing has never mattered for category-two prior consistent statements, at common law or now. *See, e.g.*, *United States v. Andrade*, 788 F.2d 521, 532–33 (8th Cir. 1986) (admitting prior consistent statements to rehabilitate over a Rule 801(d)(1)(B) objection despite "the government . . . not show[ing] that the notes were created prior to [when] the motive to fabricate them arose"). Long story short, none of the conditions for a "common-law premotive requirement" are present in category-two situations. *Tome*, 513 U.S. at 160.

Begay's view is that this is not a category-two situation at all. He was trying "to make [the] broader point" that S.S. had a motive to lie, even if he attacked her credibility in multiple ways. *United States v. Portillo*, 969 F.3d 144, 174 (5th Cir. 2020). In these "mixed" situations, involving both category-one and category-two impeachment, he believes the pre-motive requirement from *Tome* must apply. That is, a rule of inadmissibility must trump one of admissibility to avoid circumvention of the *Tome* rule. Many situations, after all, involve both category-one and category-two impeachment.

The premise of the argument may be true, but the conclusion is not. Even if many cases involve both types of impeachment, the two categories of Rule 801(d)(1)(B) are joined by an "or," meaning a statement "is not hearsay" if it satisfies either condition.[2] And if the text were not clear enough, the evidentiary rules "generally favor the admission, rather than the exclusion, of evidence." *See United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007); *see also Moore v. United States*, 648 F.3d 634, 639 (8th Cir. 2011) (explaining that the Federal Rules of Evidence "favor admitting relevant evidence absent a specific reason to exclude it"). To take an example, a hearsay statement may qualify as an excited utterance but not a present-sense impression. We do not exclude it as hearsay in that situation. *See, e.g.*, *United States v. Boyce*, 742 F.3d 792, 797–98 (7th Cir. 2014) ("We need not definitively decide whether . . . [the] statements fail to qualify under the present[-]sense impression exception because even if they did, they would still be admissible as an excited utterance."); *see also* Fed. R. Evid. 803(1)–(2) (listing each as an independent reason "not [to] exclude[]" the statement).

The same goes here. S.S. may well have had a motive to lie at the time of the rape, making the post-rape statements inadmissible under Rule 801(d)(1)(B)(i). But the statements were still admissible to counter the "attack[s] on another ground,"

---

[2]The impeachment must truly be "on *another* ground" to qualify, one not covered by the first category. Fed. R. Evid. 801(d)(1)(B)(ii) (emphasis added). Only when a party impeaches a witness on a ground "[]other" than—or in addition to—a motive to lie does the second category kick in. *Id.*

like her allegedly faulty memory. *Id.* (B)(ii); *see United States v. Flores*, 945 F.3d 687, 705 (2d Cir. 2019) (concluding there was no error in admitting prior consistent statements under subparagraph (ii) in response to challenges to both a witness's faulty memory *and* a motive to fabricate); *cf. United States v. Peneaux*, 432 F.3d 882, 891 (8th Cir. 2005) (admitting prior inconsistent statements as substantive evidence under Rules 807 and 803(4) despite the government "not refut[ing] [the] argument" that the statements "[could not] be admitted as substantive evidence under Rule 801(d)(1)(A)"). They then became fair game for the prosecutor and the jury to use as substantive evidence of Begay's guilt. *See United States v. Purcell*, 967 F.3d 159, 196–97 (2d Cir. 2020) (affirming the substantive use of non-hearsay statements admitted under Rule 801(d)(1)(B)(ii)).[3]

B.

Begay's other evidentiary objection covers what he thinks the jury should have heard. He wanted to explore S.S.'s sexual history in detail, but the district court placed limits on how far he could go. Although he could argue that somebody else was behind the injuries and the sperm fragments, prior inconsistent statements about her sexual history were off-limits. *See* Fed. R. Evid. 412(a) (limiting evidence about a victim's sexual behavior).

---

[3]S.S.'s mother testified at trial that she heard S.S. say that Begay had raped her. Her recollection of what S.S. said was not admissible as a prior consistent statement because she testified before S.S. did. *See United States v. Lanier*, 578 F.2d 1246, 1256 (8th Cir. 1978) ("[W]e recognized that the testimony of a third party may be used to introduce the prior consistent statement of a witness *after* impeachment has been used to assail the witness' testimony as a fabrication." (emphasis added)). Still, the fact that S.S.'s prior consistent statements came in anyway, through S.S. herself, means any error in admitting the hearsay statements through her mother was surely harmless, especially when considered against the backdrop of the overwhelming evidence of guilt. *See United States v. Wipf*, 397 F.3d 677, 682 (8th Cir. 2005) (noting that hearsay "testimony was merely cumulative and did not likely influence the jury" when it "mirrored" other testimony).

In his view, those limitations violated his Sixth Amendment right to confront his accuser. Even if we assume they did—a question we need not decide today— any error was harmless beyond a reasonable doubt. *See United States v. Campbell*, 986 F.3d 782, 794 (8th Cir. 2021); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (listing the factors for determining whether a Confrontation Clause violation is harmless). For one thing, the district court allowed Begay's counsel to ask her about other sexual partners, which led to the admission of much of the evidence he wanted the jury to hear, including her sexual activity around the time of the rape. *See United States v. Arias*, 74 F.4th 544, 551 (8th Cir. 2023) (noting that the extent of cross-examination otherwise permitted is an important factor). Second, "impeach[ing] her general credibility" with inconsistent stories of her sexual behavior, the only type of evidence that was off-limits, had "little or no probative value on the question of whether she falsely accused [Begay] of rape." *United States v. White Buffalo*, 84 F.3d 1052, 1054 (8th Cir. 1996). And third, the evidence of guilt here was overwhelming, particularly given the detailed testimony of multiple witnesses, the physical evidence corroborating that the rape occurred, and Begay's suspicious behavior afterward.[4] Any error in limiting the cross-examination had, at most, "a slight influence on the verdict." *Streb*, 36 F.4th at 789 (citation omitted).

## III.

Next, we move on to sentencing. Begay asks us to vacate two enhancements he received. "In evaluating each, we review the district court's construction and application of the sentencing guidelines de novo and its factual findings for clear error." *Id.* at 790 (citation omitted).

---

[4]For these same reasons, the evidence was sufficient to convict him. *See United States v. DeCoteau*, 630 F.3d 1091, 1097 (8th Cir. 2011).

## A.

The first one was for causing "serious bodily injury," U.S.S.G. § 2A3.1(b)(4)(B), which the district court imposed because of the impact of the rape on S.S.'s "mental facult[ies]." *Id.* § 1B1.1, cmt. n.1(M). As she explained, it left her unable to sleep; ruined her marriage, friendships, and relationships; and made her feel like she was "fight[ing a] battle in [her] head constantly." In her words, "[t]he pain of that day never went away."

We have approved of serious-bodily-injury enhancements in similar circumstances. In one case, it was "depression and PTSD." *United States v. Guy*, 340 F.3d 655, 658–59 (8th Cir. 2003). In another, "continued psychological problems such as recurring nightmares." *United States v. Kills in Water*, 293 F.3d 432, 436 (8th Cir. 2002). And in a third, "[i]rrational, debilitating fear, night terrors and nightmares, depression, [and] anxiety attacks that generalized into all other areas of life management." *United States v. Rodgers*, 122 F.3d 1129, 1133 (8th Cir. 1997). We agree with the district court that S.S.'s lasting psychological damage fits within this line of cases.

It makes no difference that she had no specific medical diagnosis from the rape, *cf. Kills in Water*, 293 F.3d at 436 (approving the enhancement for recurring nightmares without discussing a diagnosis), or that she had preexisting mental-health issues. It is enough that the district court believed her when she blamed Begay for bringing on some new problems and making her existing mental-health struggles worse. *See United States v. Bruguier*, 161 F.3d 1145, 1153 (8th Cir. 1998). Add the fact that her mother described a profound change in her daughter *after* the rape, and we cannot say that the serious-bodily-injury finding was clearly erroneous. *See United States v. Gibson*, 840 F.3d 512, 514 (8th Cir. 2016).

## B.

The second one was for "physically restrain[ing] [the victim] in the course of the offense." U.S.S.G. § 3A1.3. Begay's position is that it duplicates an element of aggravated sexual abuse, so it "double counts" the same conduct. *Compare id.*, *with* 18 U.S.C. § 2241(a).

We have encountered this double-counting argument before and rejected it. *See United States v. Long Turkey*, 342 F.3d 856, 859 (8th Cir. 2003) ("Victim restraint is not an element of aggravated sexual abuse"); *see also Arcoren v. United States*, 929 F.2d 1235, 1247–48 (8th Cir. 1991) ("[A]lthough 'physically restrained' requires the use of force, use of force does not necessarily entail physical restraint."). We do the same today.

## IV.

We accordingly affirm the judgment of the district court.

_____