*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

---

### UNITED STATES
Appellee

**v.**

### Donte M. BROWN, Private First Class
United States Army, Appellant

**No. 25-0181**
Crim. App. No. 20230168

Argued February 10, 2026—Decided May 12, 2026

Military Judge: Steven C. Henricks

For Appellant: *Lieutenant Colonel Robert D. Luyties* (argued); *Colonel Frank E. Kostik Jr.* and *Major Peter Ellis* (on brief).

For Appellee: *Captain Matthew C. Whear* (argued); *Colonel Richard E. Gorini, Lieutenant Colonel Marc B. Sawyer*, and *Major Stephen L. Harmel* (on brief).

Judge MAGGS delivered the opinion of the Court, in which Judge SPARKS, Judge HARDY, and Judge JOHNSON joined. Chief Judge OHLSON filed a separate opinion concurring in the judgment.

---

Judge MAGGS delivered the opinion of the Court.

This appeal requires the Court to address the admissibility of prior consistent statements under Military Rule of Evidence (M.R.E.) 801(d)(1)(B)(i) [hereinafter subparagraph (B)(i)] and M.R.E. 801(d)(1)(B)(ii) [hereinafter subparagraph (B)(ii)], a subject which the Court also recently addressed in *United States v. Ayala*, 81 M.J. 25 (C.A.A.F. 2021), *United States v. Finch*, 79 M.J. 389 (C.A.A.F. 2020), and *United States v. Frost*, 79 M.J. 104 (C.A.A.F. 2019). The granted issues are:

> I. Whether the military judge abused his discretion when he incorrectly admitted two supposed prior consistent statements by misstating the law, applying both [subparagraphs of M.R.E. 801(d)(1)(B)] in violation of *Ayala/Finch*, and failing to identify a statement that predated the clear and persistent motive to fabricate pursued by Appellant.

> II. Whether the Army Court erred when it disregarded this Court's plain language in *Ayala/Finch* and failed to explain how the prior consistent statements were relevant to rehabilitate the witness under [subparagraph (B)(ii)] beyond mere repetition.

> III. Whether this Court should adopt the *Pierre* standard from federal courts for prior consistent statements defining "relevant to rehabilitate."[1]

For reasons that we explain below, we answer all three questions in the negative. We hold that the military judge did not abuse his discretion in admitting the prior consistent statements under the exception in subparagraph (B)(ii). We do not decide whether the statements were admissible under subparagraph (B)(i). We affirm the judgment of the United States Army Court of Criminal Appeals (ACCA). *United States v. Brown*, No. ARMY 20230168, 2025 CCA LEXIS 213, 2025 WL 1368171 (A. Ct. Crim. App. May 9, 2025) (unpublished).

---

[1] The question refers to *United States v. Pierre*, 781 F.2d 329 (2d Cir. 1986).

## I. Background

Appellant was charged with two specifications of domestic violence in violation of Article 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928b (2018). Specification 1 alleged that Appellant committed a violent offense against his wife, K.B., "by stabbing her in the back and shoulder with a knife." Specification 2 alleged that he committed a violent offense against K.B. by "grabbing her neck with his hands." These specifications alleged that both incidents occurred on or about July 2, 2022. In response to these allegations, the defense theory was that Appellant had acted in self-defense after K.B. pointed a pistol at him during an argument.

In their opening statements at the court-martial, counsel for both sides informed the members that a key issue in the case would be whether K.B. had in fact pointed a pistol at Appellant before he stabbed her. Trial counsel acknowledged that K.B. had access to a pistol at the time of the argument but told the members that he expected K.B. to testify that "[K.B.]'s pistol was sitting unloaded on her bed when the accused stabbed her in the back" and that "[K.B.]'s pistol was sitting unloaded on her bed when the accused stabbed her the second time in the shoulder."

Defense counsel responded in his opening statement by saying: "[B]ased on what I expect [K.B.] to tell you, based on what I just heard from the government's opening statement, the defense stands ready to dispute her version of events because [Appellant] did, in fact, act in self-defense." He suggested that K.B. might have a motive to deny that she pointed a pistol at Appellant because she was worried about losing custody of her children, explaining: "[A]s long as [K.B.] is the victim in this case, she gets to see her children. As long as [Appellant] is the aggressor, he doesn't get to see their children."

Defense counsel then told the members that they would hear that K.B. made statements to an emergency medical technician (EMT), to a paramedic, to medical staff at the Irwin Army Community Hospital (IACH), and to an agent

of the Army Criminal Investigation Division (CID). He
said:

> Now, after this incident occurred, [K.B.] pro-
> vided a number of statements to people who
> needed to know details about what happened in
> the house. She spoke to an EMT and a paramedic
> who arrived pretty soon after the incident to pro-
> vide emergency medical care. She spoke to medi-
> cal professionals at IACH who gave her initial
> treatment as well. CID conducted a formal inter-
> view with [K.B.] after she had been released from
> the hospital a couple of days later, and you're go-
> ing to hear about all of those statements.

Defense counsel finally told the members that they should
consider several questions:

> Is the story that [K.B.] tells you in this courtroom
> consistent with all of the other stories that she
> just told the EMT, the paramedic, medical profes-
> sionals at IACH, CID? Or has the story changed?
> And if it did change, did it change in small ways,
> as the government would like you to believe, or
> has it changed in ways that are significant? And
> if it did change, why?

The Government called K.B. as a witness. On direct ex-
amination, K.B. testified that she and Appellant were ar-
guing in their bedroom. K.B. testified that she retrieved
her pistol from the top drawer of her dresser, dropped the
magazine onto the bed, cleared a round from the chamber
and dropped it onto the bed, and then placed the unloaded
pistol onto the bed. K.B. testified that as she was facing her
bed, she "happened to look back and that's when [Appel-
lant] stabbed" her in the back. K.B. testified that Appellant
then stabbed her again, this time in her left shoulder. K.B.
testified that her pistol was unloaded on the bed when the
stabbings occurred.

On cross-examination, K.B. agreed that her children
"are the most important thing in this world" to her and that
she "would do anything for them." K.B. agreed that her tes-
timony was that she did not point the pistol at Appellant

intentionally or "flag[]" Appellant.[2] Defense counsel asked
K.B. whether the EMT and a paramedic who attended her
in an ambulance "would be wrong" if they thought K.B.
pointed her pistol at Appellant's face. K.B. replied in the
affirmative. K.B. also testified that she filed for divorce
about a month after the incident and that she opposed Ap-
pellant's petition for custody of their children. K.B. denied
pointing her pistol at Appellant's face.

The Government called a neighbor who aided K.B. after
the stabbings. Trial counsel asked the neighbor what hap-
pened. The neighbor testified that K.B.'s children were
screaming at her front door, so she went next door to check
on K.B. The neighbor "opened the door and [K.B.] kind of
fell towards the door." Without objection, the neighbor tes-
tified: "[Appellant] said, 'Why'd you have to point the gun
at me?' And [K.B.] said, 'I didn't point a gun at you. You
stabbed me.'"

The Government called an EMT who attended K.B. in
an ambulance after the stabbing. After the EMT described
K.B.'s injuries, trial counsel asked the EMT what K.B. had
told her. Without objection, the EMT testified that K.B.
"admitted that she pulled an unloaded firearm and pointed
it at his face."

The Government called a CID agent who interviewed
K.B. on two occasions. The CID agent stated that he first
interviewed K.B. informally on July 2 while she was in the
hospital. The agent testified, without objection, that during
the interview "[K.B.] said that she did not point the pistol
at him. She kept it in low ready position." The agent testi-
fied that he conducted a formal recorded interview, on July
8, in which K.B. provided more details.

The Government then moved to introduce two brief seg-
ments of a video recording of K.B.'s July 8 interview with
the agent. In the first segment, which is one minute and
fifty-two seconds in length, K.B. discussed her argument

---

[2] K.B. later clarified that she uses the word "flag[]" to mean
inadvertently pointing the barrel of a weapon at someone.

with Appellant and how she oriented her pistol. In the second segment, which is approximately the same length, K.B. discussed the moments leading up to the stabbing and how she oriented her pistol. K.B. repeatedly told the CID agent that she did not point the pistol at Appellant's face. But she also said that while she was handling the pistol, "it did have to pass him, like, his body."

Defense counsel initially objected to admission of the recordings on grounds that the defense had not received prior notice. Defense counsel then clarified that the objection was because "the agent has already testified to what [K.B.] stated." The military judge asked defense counsel: "So your objection is only cumulative [and] it has nothing to do with prior consistent statement requirements?" When defense counsel did not provide a definite answer, the military judge asked trial counsel: "Under what provision of the MREs are you offering the prior consistent statement?"

Trial counsel answered the question by submitting two written arguments. In the first written argument, trial counsel asserted that the recordings were admissible under subparagraph (B)(i). He explained:

> The declarant's credibility as a witness was attacked through an express or implied charge that she "acted from a recent improper influence or motive in testifying." M.R.E. 801(d)(l)(B)(i). Specifically, defense counsel elicited evidence that [K.B.] filed a petition for divorce near the end of the month of July, and that in that same proceeding she sought full custody of her children. The obvious implication from this line of questioning is that one of [K.B.]'s motives in testifying at trial is to ensure she will gain full custody and favorable rulings in the divorce proceedings.

He further explained: "The prior consistent statements offered by the Government rebut this charge by showing [K.B.] provided a prior consistent statement to [the CID agent]."

In the second written argument, trial counsel argued that the recordings were admissible under subparagraph (B)(ii). He explained:

> The declarant's credibility as a witness was attacked "on other grounds" than [those] listed in M.R.E. 801(d)(l)(B)(i). Specifically, defense counsel attacked [K.B.] on the grounds that she testified inconsistently with a prior statement she made to first responders about pointing a pistol at the Accused prior to the first stabbing. The implication of this cross examination [sic] is that [K.B.] is now embellishing her testimony and attempting to present herself in a light more favorable to the fact finder. Additionally, during opening statements, defense counsel stated that [K.B.] spoke with several people, including paramedics and law enforcement officials, before posing the question, "if [K.B.'s] testimony did change, why?" or words to that effect.

Trial counsel further asserted: "The prior consistent statements offered by the Government rehabilitate the declarant by placing these purported inconsistencies in context and showing that the declarant has consistently stated that she did not point her pistol toward the Accused before he stabbed her."

The military judge admitted the two recorded statements as prior consistent statements under both subparagraphs (B)(i) and (B)(ii).[3] The military judge did not make an express finding about how the admission of the

---

[3] The admitted statements are recorded on a DVD admitted as Prosecution Exhibit 26. The military judge also admitted a recorded statement by K.B. to CID that concerned the words in Specification 2 alleging that Appellant grabbed K.B.'s neck with his hands. This statement was admitted as Prosecution Exhibit 27. The parties disagree in their briefs about whether Prosecution Exhibit 27 is material to the issues in this appeal. We conclude that while Prosecution Exhibit 27 might have been relevant to an assessment of prejudice if the military judge had abused his discretion in admitting Prosecution Exhibit 26, it is not material because the military judge did not abuse his discretion. We therefore do not address Prosecution Exhibit 27.

statements might rehabilitate K.B. under subparagraph (B)(i) but expressly found "based on the examination of [K.B.], this does potentially refute an improper motive for testimony . . . under [subparagraph] (B)(ii)."

Defense counsel subsequently called the paramedic who attended K.B. in the ambulance. The paramedic testified, without objection from either side, that K.B. told him that K.B. and her husband were arguing, that she had a pistol, and that "she pointed it at his face." On cross-examination, the paramedic testified that K.B. had told him that the "two attacks with the knife occurred after she set her unloaded pistol down."

The court-martial found Appellant guilty of Specification 1 and, with exceptions and substitutions, also guilty of Specification 2. The military judge, however, dismissed Specification 2 of the charge for being unreasonably multiplied with Specification 1. The military judge sentenced Appellant to a dishonorable discharge, confinement for forty months, and reduction to the grade of E-1.

The ACCA held that the military judge did not abuse his discretion in admitting the prior consistent statements under subparagraph (B)(ii). *Brown*, 2025 CCA LEXIS 213, at *22, 2025 WL 1368171, at *8. The ACCA alternatively held that even if the military judge erred in admitting the statements, the error was harmless. *Id.* at *22-24, 2025 WL 1368171, at *8. The ACCA did not decide whether the statements were also admissible under subparagraph (B)(i). *Id.* at *19, 2025 WL 1368171, at *7. The ACCA affirmed the findings and sentence. *Id.* at *24, 2025 WL 1368171, at *8.

## II. Standard of Review

"This Court reviews a military judge's decision to admit evidence for an abuse of discretion." *Frost*, 79 M.J. at 109. An abuse of discretion occurs if the military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and

the law." *Id.* (internal quotation marks omitted) (citation omitted). The abuse of discretion standard requires "more than a mere difference of opinion. The challenged action must be arbitrary . . . , clearly unreasonable, or clearly erroneous." *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014) (alteration in original) (internal quotation marks omitted) (citation omitted).

"When reviewing a lower court's decision on a military judge's ruling, we typically have pierced through that intermediate level and examined the military judge's ruling, then decided whether the Court of Criminal Appeals was right or wrong in its examination of the military judge's ruling." *United States v. Blackburn*, 80 M.J. 205, 211 (C.A.A.F. 2020) (citation modified). This Court can affirm admission of evidence on a ground not cited by a military judge because "the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *United States v. Leiffer*, 13 M.J. 337, 345 n.10 (C.M.A. 1982) (internal quotation marks omitted) (quoting *Helvering v. Gowran*, 302 U.S. 238, 245 (1937)).

### III. Governing Law

A basic rule of evidence is that "hearsay" is not admissible unless some exception applies. M.R.E. 802. The definition of "hearsay" generally includes any statement that "the declarant does not make while testifying" at trial and that is offered "to prove the truth of the matter asserted." M.R.E. 801(c)(1)-(2). The definition of hearsay, however, expressly excludes certain out-of-court statements under conditions specified in M.R.E. 801(d). This case concerns the exclusion of a witness's prior statements under subparagraphs (B)(i) and (B)(ii), which state:

> (d) *Statements that Are Not Hearsay*. A statement that meets the following conditions is not hearsay:
>
> (1) *A Declarant-Witness' Prior Statement.* The declarant testifies and is subject to cross-examination about a prior statement, and the statement:

. . . .

> (B) is consistent with the declarant's testimony and is offered:
>
> > (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
> >
> > (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground . . . .

M.R.E. 801(d)(1)(B)(i)-(ii).

In *Frost*, this Court explained the elements of subparagraph (B)(i) as follows:

> From the plain language of the rule, we derive three criteria for the admission of prior consistent statements: (1) the declarant of the statement must testify and must be subject to cross-examination about the prior statement; (2) the statement must be consistent with the declarant's testimony; and (3) the statement must be offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in testifying." M.R.E. 801(d)(1)(B)(i).
>
> In addition, this Court has recognized two additional guiding principles as governing the admission of a prior consistent statement: (1) the prior statement, admitted as substantive evidence, must precede any motive to fabricate or improper influence that it is offered to rebut; and (2) where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences, but only the one it is offered to rebut.

79 M.J. at 110-11.

In *Finch*, this Court explained the requirements of subparagraph (B)(ii) as follows:

> [F]or a prior consistent statement to be admissible under M.R.E. 801(d)(1)(B)(ii) it must satisfy the following: (1) the declarant of the out-of-court

10

statement must testify, (2) the declarant must be subject to cross-examination about the prior statement, (3) the statement must be consistent with the declarant's testimony, (4) the declarant's credibility as a witness must have been "attacked on another ground" other than the ones listed in M.R.E. 801(d)(1)(B)(i), and (5) the prior consistent statement must actually be relevant to rehabilitate the witness's credibility on the basis on which he or she was attacked. The proponent of the evidence bears the burden of articulating the relevancy link between the prior consistent statement and how it will rehabilitate the witness with respect to the particular type of impeachment that has occurred.

79 M.J. at 396.

In *Ayala*, this Court addressed the relationship between subparagraphs (B)(i) and (B)(ii) by stating: "prior consistent statements may be eligible for admission under either (B)(i) or (B)(ii) *but not both*." 81 M.J. at 28 (emphasis added). The ACCA, in its opinion in this case, found this statement troublesome and respectfully requested that this Court provide more clarity. *Brown*, 2025 CCA LEXIS 213, at *15-17, 2025 WL 1368171, at *6. Having reviewed the ACCA's concerns, we agree that this Court's explanation of the relationship between subparagraphs (B)(i) and (B)(ii) in *Ayala* requires further explanation.

In some instances, a witness's testimony will be attacked on *only one ground*. In such cases, what the Court said in *Ayala* is correct based on the wording of subparagraph (B)(ii). Subparagraph (B)(ii) excludes from the definition of hearsay a prior consistent statement offered "to rehabilitate the declarant's credibility as a witness when attacked *on another ground*." (Emphasis added.) As a leading treatise explains, the phrase "on another ground" means on "*any other ground than the narrow ground recognized in Rule 801(d)(1)(B)(i).*" 30B *Wright & Miller's Federal Practice & Procedur*e § 6754 (2017 ed. Supp. 2025) (emphasis added). The United States Court of Appeals for the Eighth Circuit has similarly explained that "[t]he impeachment must truly be "on *another* ground to qualify, one

not covered by the first category. Only when a party impeaches a witness on a ground '[]other' than—or in addition to—a motive to lie does the second category kick in." *United States v. Begay*, 116 F.4th 795, 801 n.2 (8th Cir. 2024) (alteration in original) (citation omitted).

It follows that if a witness's testimony is attacked on only one ground, a prior consistent statement offered to rebut that challenge may be eligible for admission under either subparagraph (B)(i) or subparagraph (B)(ii), but not both, because the two subparagraphs address different possible grounds of attack. For example, if a declarant attacks a witness's testimony only as a recent fabrication, a prior consistent statement offered to rebut that attack could fit only into the exclusion in subparagraph (B)(i), and not subparagraph (B)(ii), because subparagraph (B)(ii) concerns only grounds other than those covered by subparagraph (B)(i).

But sometimes a witness's testimony will be attacked *on more than one ground*. For example, a party might attack the witness's testimony as being a recent fabrication and also attack the testimony based on the witness's poor memory. In such circumstances, a prior consistent statement might be properly offered to rebut the recent fabrication attack under subparagraph (B)(i) and also properly offered to rebut the poor memory attack under subparagraph (B)(ii). This was the case in *Begay*, where the court held that a witness's prior consistent statements fit into both subparagraphs (B)(i) and (B)(ii) because "she withstood multiple attacks on her credibility." 116 F.4th at 799. Specifically, the defense counsel attacked the witness as having a motive to lie and as being untrustworthy because she had a faulty memory. *Id.* Thus, even if the witness had a motive to lie, the court found that her "statements were still admissible to counter the 'attack[s] on another ground,' like her allegedly faulty memory." *Id.* at 802 (alteration in original) (citation omitted); *see also United States v. Campo Flores*, 945 F.3d 687, 705-06 (2d Cir. 2019) (holding it was not error to admit prior consistent statements under subparagraph (B)(ii) when a witness was

attacked as having a motive to fabricate and a faulty memory). The Court's statement in *Ayala* is therefore not applicable to situations in which a witness's testimony is challenged on multiple grounds.

## IV. Discussion

We now consider whether the challenged statements that the military judge admitted are excluded from the definition of hearsay under subparagraph (B)(ii). Because we are persuaded that they are excluded, the question whether the statements were also excluded from the definition of hearsay under subparagraph (B)(i) is moot.

As the Court explained in *Finch*, subparagraph (B)(ii) has five elements. The first element is that the declarant of the out-of-court statement testifies at trial. *Finch*, 79 M.J. at 396. The parties agree that this element is met because K.B. testified at the court-martial. The second element is that the declarant is subject to cross-examination about the prior statement. *Id.* The parties agree that this element is satisfied because K.B. was subject to cross-examination.

The third element identified in *Finch* is that the statement must be consistent with the declarant's testimony. *Id.* The parties disagree about whether this element was satisfied. Appellant contends that it was not, because the statements that K.B. made to the CID agent were *not* consistent with the statements that K.B. made when testifying at the court-martial. Appellant asserts that K.B. admitted to the CID agent that her pistol may have passed by Appellant's body, but she testified at the court-martial that she did not "flag" him with the pistol. The Government responds that the statements were consistent with respect to the key fact at issue, which was that K.B. never intentionally pointed the pistol at Appellant.

We are persuaded by the Government's argument and conclude that the military judge did not abuse his discretion in concluding that the third element was satisfied. As this Court explained in *Finch*, a "prior statement need only be 'for the most part consistent' and in particular, be

'consistent with respect to . . . fact[s] of central importance to the trial.' " *Id.* at 395 (alterations in original) (quoting *United States v. Vest*, 842 F.2d 1319, 1329 (1st Cir. 1988)). The military judge could reasonably conclude that the issue of central importance at trial was whether K.B. did or did not intentionally point her pistol at Appellant, which was relevant to the question whether Appellant acted in self-defense.

The fourth element identified in *Finch* is that the declarant's credibility as a witness must have been "attacked on another ground," which as explained above, means a ground other than the narrow grounds listed in subparagraph (B)(i). *Id.* at 396 (internal quotation marks omitted) (citation omitted). The parties also disagree about this element. The Government contends that this element is satisfied because defense counsel attacked K.B.'s credibility on grounds of "inconsistency." Appellant, however, counters that "inconsistency" is not a proper "[]other ground" within the meaning of subparagraph (B)(ii). Appellant asserts that if a challenge of inconsistency made a prior consistent statement admissible then any time "a witness is impeached with a prior inconsistent statement, any consistent statement the witness made may be admissible under [subparagraph] (B)(ii)." Appellant argues that such an interpretation would undermine the purpose of subparagraph (B)(ii), which is to allow prior consistent statements only for limited rehabilitative reasons.

To address the fourth element, we must consider two issues. One is whether defense counsel attacked K.B.'s testimony on grounds of "inconsistency," as the Government argues. The other is whether "inconsistency" is not a proper "[]other ground" within the meaning of subparagraph (B)(ii), as Appellant argues.

With respect to the former issue, we see in defense counsel's opening statement two distinct challenges to K.B.'s credibility. One is that K.B. had a motive to fabricate her testimony in court so that she could have custody of her

children.[4] But we also see a separate line of attack in which defense counsel suggested to the members that they should not believe K.B.'s expected testimony because it was inconsistent with her prior statements. Defense counsel made this second attack, in our view, without tying the alleged inconsistency to a motive to fabricate. To repeat, defense counsel specifically directed the members to consider:

> Is the story that [K.B.] tells you in this courtroom consistent with all of the other stories that she just told the EMT, the paramedic, medical professionals at IACH, CID? Or has the story changed? And if it did change, did it change in small ways, as the government would like you to believe, or has it changed in ways that are significant? And if it did change, why?

With respect to the latter issue, we need not decide in this case whether an attack solely on the ground of "inconsistency" would be a proper "[]other ground" under subparagraph (B)(ii) in all contexts. We decide only that in this case, defense counsel's attack on grounds of inconsistency fits within subparagraph (B)(ii) based on how defense counsel presented the attack. As explained above, defense

---

[4] If K.B.'s having a motive to fabricate were the only ground on which defense counsel attacked K.B.'s credibility, then we would need to confront the question whether K.B.'s prior consistent statement should be analyzed exclusively under subparagraph (B)(i). *See United States v. Portillo*, 969 F.3d 144, 174 (5th Cir. 2020) (holding that accusing witnesses of "inconsistency only to support [the] claim that the [witnesses] fabricated their stories [is] a motive that fits squarely within 801(d)(1)(B)(i), and not the alternative 801(d)(1)(B)(ii)"). In *Portillo*, the United States Court of Appeals for the Fifth Circuit found it "impossible to separate the defendants' attack on the [witnesses'] motivations from their charges of inconsistency, making it difficult to hold that the [witnesses] were attacked on 'another ground.'" *Id.* at 175. Thus, admission of the witnesses' prior consistent statements under subparagraph (B)(ii) was precluded in *Portillo*. *Id.* We do not need to confront that question here because, as stated, we view defense counsel's attack on K.B.'s motivation to fabricate as separate from defense counsel's attack on K.B.'s inconsistency.

counsel not only stated that K.B.'s testimony was inconsistent with prior statements but also told the members that they could only assess K.B.'s credibility based on the entirety of her statements. Defense counsel said that K.B. made multiple statements after the stabbing incident, including statements to an EMT, to a paramedic, and to CID, and he expressly promised the members that "you're going to hear about *all of those* statements." (Emphasis added.) Defense counsel further asked the members to consider: "Is the story that [K.B.] tells you in this courtroom consistent with *all of the other stories* that she just told the EMT, the paramedic, medical professionals at IACH, *CID*?" (Emphasis added.)

In the light of these remarks by defense counsel, we are persuaded that the military judge did not abuse his discretion with respect to the fourth element. In short, defense counsel attacked K.B.'s credibility based on inconsistency *and* told the members that they must assess this inconsistency by hearing all of her statements, including those to CID. Yet defense counsel then opposed the Government's effort to introduce the recordings of her statements to CID. An "opposing party may not pick and choose among prior statements to create an appearance of conflict and then object when this appearance is rebutted by means of a fuller version of the same prior statements." *United States v. Tarantino*, 846 F.2d 1384, 1411 (D.C. Cir. 1988).[5]

The fifth element identified in *Finch* is that the prior consistent statement must actually be relevant to rehabilitate the witness's credibility. 79 M.J. at 396. The parties also disagree about this element. Appellant contends that this element is not met because the military judge "never found what rebutting force the statements had beyond

---

[5] A leading treatise cites *Tarantino* and explains that courts have justified the principle it expresses based on doctrines of completeness, estoppel, and "opening the door." 30B *Wright & Miller's Federal Practice & Procedure* § 6754. We do not select among these different justifications but simply conclude that subparagraph (B)(ii) applies in this context.

16

mere repetition." Appellant further argues that this Court should modify the fifth element by replacing the "relevant to rehabilitate" test with a more demanding "significant rebutting force" test discussed in *Pierre*, 781 F.2d at 330 (internal quotation marks omitted). The Government responds that K.B.'s statements to CID were "relevant to rehabilitate" because defense counsel attacked K.B.'s credibility on the ground of inconsistency and her statements were not inconsistent.

We agree with Appellant that mere repetition is not enough to satisfy the fifth element. As this Court has explained, a "[m]ere repeated telling of the same story is not relevant to whether that story, when told at trial, is true." *United States v. McCaskey*, 30 M.J. 188, 192 (C.A.A.F. 1990). But we also agree with the Government that K.B.'s prior consistent statements were relevant to rehabilitate her credibility based on the specific attack on her credibility in this case. While K.B.'s statement to CID that she did not point her pistol at Appellant does not make her consistent testimony at trial true, it directly responds to defense counsel's attack that she lacks credibility because she made inconsistent statements, including statements to CID, and that her credibility could be assessed only by considering all her statements.

Appellant also argues that the prior consistent statement that the military judge admitted did not *repair the damage done by the July 2nd statement* to the EMTs." As recounted, an EMT testified that K.B. told her that she had pointed her pistol at Appellant before he stabbed her. We agree that the prior consistent statement by itself could not disprove the truth of the EMT's statement. But the prior consistent statement still was relevant to rehabilitate K.B.'s credibility based on defense counsel's attack that she made inconsistent statements and that her credibility had to be judged by all of her statements. Under these circumstances, we see no need to revisit our "relevant to rehabilitate" test and adopt the apparently more demanding test in *Pierre*; under either test, we are persuaded that the

military judge did not abuse his discretion in concluding that the fifth element was satisfied.

For the foregoing reasons, we conclude that the military judge did not abuse his discretion in admitting the prior consistent statements at issue under subparagraph (B)(ii). We need not decide whether the statements were admissible under subparagraph (B)(i) because that question is moot.

## V. Conclusion

The Court answers the three granted questions in the negative. The judgment of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, concurring in the judgment.

Unlike the majority, I conclude that the military judge abused his discretion when he admitted at trial the prior consistent statement of the victim pursuant to Military Rule of Evidence (M.R.E.) 801(d)(1)(B)(ii).[1] Indeed, I am concerned that the approach taken by the majority blurs the line between statements that are properly admissible under M.R.E. 801(d)(1)(B)(ii) and those that are not, and thus risks opening the door in future cases to statements that the Military Rules of Evidence were designed to exclude. Nonetheless, I have determined that in the instant case the military judge's error did not prejudice Appellant. Therefore, I concur in the judgment.

## I. Three Main Concerns

I have three main concerns with the majority opinion. I will address each of them in turn.

### A. Characterization of the Defense Counsel's Position

In its opinion the majority states:

> In short, defense counsel attacked K.B.'s credibility based on inconsistency *and* told the members that they must assess this inconsistency by hearing all of her statements, including those to [the Army Criminal Investigation Division (CID)]. Yet defense counsel then opposed the Government's effort to introduce the recordings of her statements to CID.

*United States v. Brown*, __ M.J. __, __ (16) (C.A.A.F. 2026). If this characterization is correct, the majority's stance in this case is understandable because the doctrines of completeness and estoppel could legitimately be seen as coming into play. However, upon reviewing the record, I am not as convinced as the majority that the defense counsel actually asserted that the panel members *needed to hear all of the*

---

[1] The majority does not reach the issue of whether the victim's statement was admissible under M.R.E. 801(d)(1)(B)(i). As a result, I find no need to address this issue because, as explained below, even if the military judge did abuse his discretion in admitting the statement under this provision, the error was harmless.

*victim's statements* in order to assess her credibility *based on inconsistency*.

In support of its characterization of what the defense counsel said, the majority points to two comments he made during opening statements. First, defense counsel said to the panel members: "[Y]ou're going to hear about all of those statements [made by the victim]." However, I note that defense counsel told the panel members that they would hear "*about*" the statements; he did not say that they would actually hear the statements themselves. (Emphasis added.) And indeed, the panel members already had heard "about" the statements—from Government counsel.[2] That is a fine distinction, but it merits mentioning.

Second, and more importantly, the majority points to a passage where defense counsel said: "Is the story that [the victim] tells you in this courtroom consistent with all of the other stories" that she previously had told. However, as the majority notes, the defense counsel then said to the panel members: "And if [the victim's story] did change, why?" Further, the defense counsel's comment about the victim changing her story came directly after he highlighted that "as long as [the witness] is the victim in this case, she gets to see her children. As long as [Appellant] is the aggressor, he doesn't get to see their children." Thus, the defense counsel's query about "why" the victim's story changed seems to tie any inconsistent statements made by the victim *to her motive to fabricate*[3]—which is a ground for admission under M.R.E. 801(d)(1)(B)(i) rather than M.R.E. 801(d)(1)(B)(ii).

In light of these facts, I am not convinced the defense counsel argued that the panel members needed to hear all

---

[2] The defense counsel made the comment cited above while reminding the panel members that the *Government* had asked them during voir dire: " 'Are you open to the idea that when a person has to retell an event over and over again, the retelling may vary in small ways?' "

[3] In essence, the defense theory was that the victim changed her earlier statement that she had pointed her firearm at Appellant because she later realized such an admission would jeopardize gaining custody of her children.

of the victim's prior statements in order to assess her credibility based on inconsistency.[4] Rather, it seems that defense counsel was referring to the victim's motive to fabricate. Accordingly, admission of her prior consistent statement under (B)(ii) was improper, as the witness was never impeached on "another ground."

To be sure, these facts are specific to the instant case. However, the majority's view of them and its consequent disposition of the M.R.E. 801(d)(1)(B)(ii) issue raises concerns for future cases. I believe the law is clear that a prior consistent statement is not automatically admissible under M.R.E. 801(d)(1)(B)(ii) simply because a defense counsel notes in passing that the witness made a prior inconsistent statement and then ties that inconsistency to a ground specifically provided for in M.R.E. 801(d)(1)(B)(i). Although a prior consistent statement may be admissible under both M.R.E. 801(d)(1)(B)(i) and M.R.E. 801(d)(1)(B)(ii), the *grounds* for admissibility under each provision are separate and distinct. This point is amply demonstrated by the plain language of M.R.E. 801(d)(1)(B)(ii) stating that a prior statement is not hearsay if it is consistent with the witness's testimony at trial, *and* if the statement is offered to rehabilitate the witness's credibility "on another ground," i.e., on a ground *other than* those spelled out in M.R.E. 801(d)(1)(B)(i). I am concerned that admitting the statements here may be seen as opening the door to admission whenever a witness has been impeached with prior inconsistent statements, regardless of the timing or content of the consistent statements, and regardless of the purported ground for the admission of those statements.

### B. Inconsistency, Standing Alone, is Not a Basis for Admission

The majority opinion states: "[W]e need not decide in this case whether an attack solely on the ground of 'inconsistency' would be a proper '[]other ground' under subparagraph (B)(ii) in all contexts." __ M.J. at __ (15) (second alteration in original). This statement is technically correct;

---

[4] Perhaps it is these weaknesses in the factual underpinning of this approach that caused the Government not to pursue such an argument at trial or before this Court.

we need not decide this point as broadly phrased. However, I am concerned that a potential for mischief lurks in this seemingly innocuous point.

No one reading the majority opinion should be under the impression that it is an open question whether a witness's prior consistent statement becomes admissible under M.R.E. 801(d)(1)(B)(ii) whenever defense counsel simply points out an inconsistency in the witness's trial testimony. That approach obviously would ignore the language, and gut the purpose, of M.R.E. 801.

While the Advisory Committee Notes to Fed. R. Evid. 801 (2014 amendment) make reference to "inconsistency" as another grounds of impeachment allowing admission under (B)(ii), this is in reference to "consistent statements that are *probative to explain what otherwise appears to be an inconsistency* in the witness's testimony."[5] (Emphasis added.) The Advisory Committee Notes further clarify that the amendment did "not change the traditional and well-accepted limits on bringing prior consistent statements before the factfinder for credibility purposes," and they do not "allow impermissible bolstering of a witness." *Id.* As this Court recognized in *United States v. Finch*, the "permissible *uses* of admitted evidence have changed, but the *requirements* to admit that evidence have not." 79 M.J. 389, 396 (C.A.A.F. 2020).

And caselaw on this point is clear—inconsistency alone is not a ground of admission. *See, e.g.*, *United States v. Toney*, 161 F.3d 404, 409 (6th Cir. 1998) (noting the "prior consistent statements in no way clarify or explain the even earlier inconsistent statements that [the witness] allegedly made," which "would only have bolstered [her] in-court exculpatory statements" and thus "had no rehabilitative value"); *United States v. Cotton*, 823 F.3d 430, 437 (8th Cir.

---

[5] The M.R.E. 801 Drafters' Analysis explaining the 2016 amendment omits this initial language, but there is no basis to conclude that this is an intentional departure given the amendment is described as "in accordance with an identical change to Federal Rule of Evidence 801(d)(1)(B)." *Manual for Courts-Martial, United States*, Analysis of the Military Rules of Evidence app. 22 at A22-61 (2016 ed.).

2016) ("Use of a prior consistent statement to rehabilitate the credibility of a witness who has been impeached by a prior inconsistent statement is appropriate when the statement contextualizes, clarifies, or amplifies the meaning of the witness's testimony or inconsistent statement."); *United States v. Miller*, 874 F.2d 1255, 1274 (9th Cir. 1989) (exclusion correct where "prior statements in no way help to explain or amplify the inconsistent statement with which [the witness] was impeached"); *United States v. Adams*, 385 F.2d 548, 550 n.3 (2d Cir. 1967) (noting prior consistent statements "would have been equally incompetent after impeachment which here was solely by contradiction"); *United States v. Simonelli*, 237 F.3d 19, 27 (1st Cir. 2001) (providing "prior statements are admissible which tend to show the statement is not really inconsistent when it is understood in its proper context"); *United States v. Iu*, 917 F.3d 1026, 1033-34 (8th Cir. 2019) (endorsing admission of " 'prior consistent statement to rehabilitate the credibility of a witness who has been impeached by a prior inconsistent statement . . . when the statement contextualizes, clarifies, or amplifies the meaning of the witness's testimony or inconsistent statement' " (quoting *Cotton*, 823 F.3d at 437)).

### C. Here, the Prior Consistent Statement Did Not "Rehabilitate" the Witness

As noted, "inconsistency" *may* be an appropriate ground for admission where the prior consistent statement serves to (a) "explain the alleged inconsistency or to show that it was not really inconsistent at all," *United States v. McCaskey*, 30 M.J. 188, 193 (C.M.A. 1990), *or* (b) for example, rebut the assertion or implication that the witness's testimony is the product of a faulty memory, *United States v. Ruiz*, 86 M.J. 75, 83 (C.A.A.F. 2025). A prior consistent statement that does not serve these functions would instead merely repeat and bolster the testimony of the witness. As the Supreme Court recognized in *Tome v. United States*, were admission premised on an idea "that, in a broad sense, any prior statement by a witness concerning the disputed issues at trial would have some relevance in assessing the accuracy or truthfulness of the witness' in-

court testimony," then "Congress could have adopted that rule with ease." 513 U.S. 150, 159 (1995).

The majority quotes *United States v. Tarantino*, 846 F.2d 1384, 1411 (D.C. Cir. 1988), for the proposition that an "'opposing party may not pick and choose among prior statements to create an appearance of conflict and then object when this appearance is rebutted by means of a fuller version of the same prior statements.'" *Brown*, __ M.J. at __ (16). Fair enough. But I do not believe that is what happened here. Appellant did not "pick and choose among prior statements to create *an appearance* of conflict"—the impeaching statement and prior consistent statement are *indeed in conflict*, and the victim's prior consistent statement did not explain this conflict or put it into context. This differs from *Tarantino*, where impeachment with testimony from a prior proceeding allowed admission of "additional testimony given . . . at the same previous trial" which "place[d] those statements in context." 846 F.2d at 1411; *see also United States v. Portillo*, 969 F.3d 144, 176 (5th Cir. 2020) (rejecting admission under "rule of completeness" because it was "not demonstrated that the statements . . . correct any misleading impressions created by the defendants' references to the prior statements").

Here, the admitted statements by the victim only provided repetition, not rehabilitation, because they did nothing to explain the impeaching inconsistent statements. As we have noted, "Mere repeated telling of the same story is not relevant to whether that story, when told at trial, is true." *McCaskey*, 30 M.J. at 192.

## II. The Military Judge Abused His Discretion

In light of these points, I conclude that the military judge misunderstood and misapplied the law here. It is evident from the record that he believed that inconsistency alone was a sufficient basis under M.R.E. 801(d)(1)(B)(ii) to admit the victim's statements that are at issue. And yet, as demonstrated above, the military judge was not correct on this point. Therefore, the military judge abused his discretion.

### III. Appellant Was Not Prejudiced by This Error

Although the military judge erred by admitting these statements, Appellant's conviction should stand because he was not prejudiced. In these circumstances, "the test for prejudice is 'whether the error had a substantial influence on the findings.'" *Finch*, 79 M.J. at 398 (quoting *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019)). To assess prejudice, "this Court weighs: '(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.'" *Id.* (quoting *Kohlbek*, 78 M.J. at 334).

The Government's case was fairly strong. KB testified as to the sequence of events and that the weapon had been cleared and placed on the bed before the stabbing. Photographs of the scene and the investigating CID agent's testimony corroborated that the firearm was cleared and found on the bed. And Appellant admitted he believed the weapon had been put down by the time he stabbed KB and that he did not believe (though he was uncertain) the magazine had been in the weapon at the time. *Cf. United States v. Frost*, 79 M.J. 104, 112 (C.A.A.F 2019) (weak case where only witness had credibility undermined and "the Government presented at trial no forensic evidence, no other direct witnesses, and no evidence of previous" behavior).

Conversely, the defense theory of self-defense was weak. Nothing suggested Appellant was in fear for his life when he decided to stab KB, and while the defense sought to impeach KB as to her motive to fabricate, this approach failed to adequately rebut evidence that the weapon was set aside when the stabbing took place. The defense offered no explanation as to why the gun was found without the magazine and with the chamber cleared, other than vague intimations that the scene had not been secured.

As to materiality and quality, the conclusion that the prior statements lacked rebutting force and relevance conversely suggests that they lacked materiality. The statements, being consistent with trial testimony, were largely cumulative. Because the statements failed to rebut the inconsistent statements, and did not add substantially to

7

what was already before the panel, it seems unlikely the evidence was significant in the minds of the members. Nor did the statements work to malign Appellant or effectively bolster KB's credibility, given trial defense counsel persuasively argued they were self-serving statements made after she had "days . . . to think about how to adjust her story."

Moreover, while KB's statements about whether she pointed the gun at Appellant were important, they did not go "to the heart of the matter in dispute," *Frost*, 79 M.J. at 112, given the evidence that the gun was set aside by the time KB was stabbed. As trial counsel noted in closing, Appellant's and KB's stories "vary in several ways, but there is one glaring consistency. . . . [KB] put that gun down on the bed. She was empty-handed. She was unarmed." *See Kohlbek*, 78 M.J. at 334 (holding excluded statement not "particularly material" where it "only call[ed] into question the reliability of [appellant's] confession" but did not "negate or otherwise disprove the remaining evidence").

Thus, considering the above factors, the Government has met its burden of showing the error in admission was harmless.

## IV. Conclusion

While the military judge's error in admission was ultimately harmless, it still is imperative to maintain the principles undergirding the text and purpose of M.R.E. 801(d)(1)(B)(ii). Where the Military Rules of Evidence and our precedents outline requirements for admission, such guidance must control. Because the prior consistent statements here did not explain or contextualize the inconsistent statements with which the witness was impeached, the consistent statements lack rebutting force and thus relevance as to the impeachment which occurred. Accordingly, they should have been excluded. I therefore respectfully disagree with the majority's contrary conclusion.